c/o Miyanna Stafford
1635 Old US 41 Hwy
Kennesaw, Georgia by [30152]

APPEAR AS: SUI JURIS AND PRO SE



RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 0 1 2023

KEWNR. WEIMER, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

MIYANNA STAFFORD AND
CHRISTINA ANDREWS
     Plaintiffs,

vs.
BIRCHSTONE RESIDENTIAL INC. and
DAVID DEITZ
CO-FOUNDER AND PRESIDENT OF
BIRCHSTONE RESDIENTAL INC.
    Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: **1:23-CV- 0495**

COMPLAINT FOR MONETARY
DAMAGES FOR:
VIOLATIONS OF CONSTITUTIONALLY
PROTECTED RIGHTS, DEFAMATION,
AND MENTAL ANGUISH AND
SUFFERING

Date: _____ Day of _____, _____

NORTH DISTRICT COURT

## Jurisdiction and Venue

1. This court has jurisdiction over this complaint pursuant to **28 U.S. Code § 1332(a)(1)**, as
   the matter in this complaint is in excess of $75,000 as required and the parties are
   residents of different states. The above-named Plaintiffs are residents of Cobb County,
   Georgia. The above-named Defendant's organization's registered address is in Coppell,
   Texas.
   Take notice that **42 U.S. Code § 1983 Civil action for deprivation of rights** applies to
   this civil action complaint.

## COMPLAINT

2. Comes now the plaintiffs, as named above, and complains against the above-named
   Defendant for violation of Plaintiffs constitutional rights, breach of contracts, defamation
   of character, extortion of Plaintiffs and their minor dependents, and mental anguish and
   suffering. Defendants charged Plaintiffs an invalid fee not within the Plaintiffs leasing
   contract and titled the fee "Lease violation". Plaintiffs disputed the fee in which the
   Defendants organization did not validate nor remove the fee.
   Plaintiffs sent the Defendants organization three (3) notices of this breach of contract and
   did not receive a response, resulting in the Defendants organization to default.
   Defendants' organization also forced the Plaintiffs into default on rental payments

through their accounting, which made Plaintiffs lose faith in the Defendants organization and fearful of being displaced. Plaintiffs were compelled to find a new residence to avoid eviction.

# Parties

3. Plaintiff, Miyanna Stafford, was a resident of Halston Shiloh Valley, managed by BIRCHSTONE RESIDENTIAL INC.
4. Plaintiff, Christina Andrews, was a resident of Halston Shiloh Valley, managed by BIRCHSTONE RESIDENTIAL INC.
5. Defendant, David Deitz, is the co-founder and president of BIRCHSTONE RESIDENTIAL INC.
6. Defendant, BIRCHSTONE RESIDENTIAL INC., is the property management company for Halston Shiloh Valley.

## 1ST Cause of Action- Defendant violated Plaintiffs constitutional rights, breached rental contract, and defamed Plaintiffs reputation

7. The Plaintiffs agreed to the leasing contract set forth by Atlantic Pacific Property management on 5/13/2022, which has since been acquired by HALSTON SHILOH VALLEY and property management company BIRCHSTONE RESIDENTIAL INC in June of 2022.

8. The Defendant's organization did not offer or furnish an amended lease contract and/or any addendums or **Disclosure Notice of Owner or Managing Agent and Equal Housing Opportunity Policy** information to Plaintiffs upon the Defendants acquisition of HALSTON SHILOH VALLEY.

9. On November 1, 2022, the Defendant's organization sent an electronic (1st) notice of trash violation accusing Plaintiffs of multiple counts of said violation and imposing a $200 violation fee, which was added to Plaintiffs rental statement for the month of November 2022 as a "Lease Violation" and placed a copy of the violation to Plaintiffs Residential File.

This is a direct breach of Plaintiff's rental contract pursuant to **Service Billing Addendum, section 1§ B Trash Removal, Par. (2) & (3)** stating that Plaintiffs monthly charges for trash removal is $10.00 FIXED AMOUNT, and $0 in other charges.

Defendant is also in violation of Plaintiffs constitutional rights pursuant to the **1877 Georgia Constitution (as ratified without subsequent amendments) Article I, BILL OF RIGHTS, Section III: Par. II.** "No bill of attainder, ex post facto law, retroactive law, or law impairing the obligation of contracts, or making irrevocable grants of special

privileges or immunities, shall be passed." for charging said violation fee ex post facto and impairing the obligation of the contract agreement already in effect.

## 2nd Cause of Action- Defendant breaches complaint notices, Affidavit, and Default

10. Plaintiff sent a complaint to Defendant's organization, attention to John Clark d/b/a Regional Manager for BIRCHSTONE RESIDENTAL on 11/3/2023 to demand relief of fee removal from the November 2022 rental statement and cease from defamation of Plaintiff's reputation by adding the violation to Plaintiffs Residential File. The Plaintiffs were notified that the complaint was addressed to the incorrect regional manager and was forwarded to the appropriate regional manager who did not resolve the dispute with any relief.

11. Plaintiffs paid full base rent and additional rent of utilities on 11/3/2022 online through the residential portal and sent an Affidavit to BIRCHSTONE RESIDENTAL INC's President, David Deitz, on 11/6/2022 further disputing the lease violation fee and Plaintiffs still incurred a late fee charge for the violation on 11/10/2022. Defendant's organization applied $85.07 of Plaintiffs rental payment to the violation fee of $200 causing an outstanding balance due on additional rent. BIRCHSTONE RESIDENTAL INC's President, David Deitz, did not respond to the Affidavit with a rebuttal or cure of breach.

## 3rd Cause of Action- Defendants displayed unethical accounting practices and addressed minors in attempt to collect payment

12. Take notice that Plaintiffs paid full base rent and utilities on 12/3/2022. Defendant's organization allocated the rental payment to fully satisfy the trash violation fee in dispute and late fee totaling $375 before allocating the rent payment to actual base rent and additional rent. This caused an outstanding balance owed for base rent and additional rent, and Plaintiffs incurred an additional late fee of $175 for month of December. Defendant's organization sent an electronic (1st) Notice of Past Due Reminder to the Plaintiffs on 12/5/2022 addressing Plaintiffs and their minor dependents about the late rental payment totaling $550.

BIRCHSTONE RESIDENTAL INC breached the lease by further penalizing Plaintiffs on unresolved dispute, non-response to Affidavit, and addressing minor dependents with a bill for payment.

Take further notice that it is unlawful to address minor dependents with a bill for payment. Minors are legally disabled and cannot consent to contract. Pursuant to **1877 Georgia Constitution (as ratified without subsequent amendments), ARTICLE I. – BILL OF RIGHTS – SECTION IV. Paragraph I.** "Laws of a general shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law. No general law affecting private rights, shall be

varied in any particular case, by special legislation, except with the free consent, in writing of all persons to be affected thereby; and no person under legal disability to contract is capable of such consent."

13. Plaintiffs sent the Defendant a 2nd Notice Opportunity to Cure on 12/9/2022 and 3rd Notice of final default on 12/24/2022, while incurring $225 in administrative fees, in which Defendant did not and still have not rebutted or cured breaches.

    Defendant is in default of final notice as of 1/2/2023.

14. Take further notice that Plaintiffs, in good faith, attempted to pay full base rent and additional rent on 1/3/2023 and payment was rejected by the Defendant's organization's service provider and Plaintiffs were redirected to contact the Defendant's organization directly to satisfy the rent payment in full <u>including</u> all late fees with no exceptions. Plaintiffs were not given prior notice by Defendant's organization of any conditional acceptance of rent.

### 4th Cause of Action- Plaintiffs were coerced to find a new residence due to fear of forceful default and eviction

15. Plaintiffs received an Announcement notification from the Defendant's organization with the purpose of briefing HALSTON SHILOH VALLEY apartment community on their changes to the community in which it stated: **Upcoming Changes:** Starting November 1, 2022, evictions will be filed the 10th of every month no exceptions, and the legal fee is $500.

16. Plaintiffs, in fear of rent default and eviction based upon the Defendant's organizations conduct and no response to Plaintiffs dispute, began to search for a new residence in December of 2022 after incurring an additional invalid late fee on the December rental invoice.

17. Plaintiffs used time to research, travel to, and view prospective residences while incurring expenses in gas totaling $200, application fees totaling $300, and moving costs including rent and utility deposits totaling $508, contracting movers totaling $300, and prorated rent totaling $677.

    Take notice that Plaintiffs were also subject to credit and background checks, receiving inquiries on Plaintiffs consumer reports. Plaintiffs search for a new residence spanned from 12/5/2022 to 12/22/2022 in which on this date a new rental contract was signed. Plaintiffs stated in final default Affidavit that the current rental lease is terminated effective 01/01/2023 at Halston Shiloh Valley and to allow thirty (30) days to vacate. Defendant did not rebut conditions and facts stated in final default.

Take further notice that Plaintiffs were obligated to pay expenses for both residences from this time.

18. Pursuant to **1877 Georgia Constitution, BILL OF RIGHTS, SECTION III., Par. II.** "No bill of attainder, ex post facto law, retroactive law, or law impairing the obligation of contracts, or making irrevocable grants of special privileges or immunities, shall be passed."

Count one, Defendants charged a new fee ex post facto that was not within Plaintiffs original lease contract which is a violation of the above stated Constitution.

19. Take further notice that pursuant to **1877 Georgia Constitution, BILL OF RIGHTS, SECTION I., Par. III.** "No person shall be deprived of life, liberty, or property, except by due process of law."

Count two, Plaintiffs were deprived of their monetary property by Defendants without due process as stated in the Constitution above.

20. Take further notice that pursuant to **1877 Georgia Constitution, BILL OF RIGHTS, SECTION I., Par. XVI.** "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath, or affirmation, particularly describing the place, or places, to be searched, and the persons or things to be seized."

Count three, Defendants denied Plaintiffs of their constitutionally protected right to secure their property and effects by seizing Plaintiffs rental payment unreasonably and applied it to their violation fee which is a violation as stated in the above Constitution.

21. Take further notice that pursuant to **1877 Georgia Constitution, BILL OF RIGHTS, SECTION III., Par. I.** "In cases of necessity, private ways may be granted upon just compensation being first paid by the applicant. Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid."

Count four, Defendant's organization took Plaintiffs private monetary property to apply to their public violation charge without just or adequate compensation first being paid as stated in the above Constitution.

22. Take Further notice that pursuant to **1877 Georgia Constitution, BILL OF RIGHTS, SECTION I., Par. XVII.** "There shall be within the State of Georgia neither slavery nor involuntary servitude, save as a punishment for crime after legal conviction thereof."

Count five, Defendant's organization coerced Plaintiffs into involuntary servitude by taking their monetary property for Defendant's violation fee without conviction of a crime as stated in the above constitution.

23. Take Further notice that pursuant to **1877 Georgia Constitution, BILL OF RIGHTS, SECTION IV., Par. Paragraph I.** "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law. No general law affecting private rights, shall be varied in any particular case, by special legislation, except with the free consent, in writing of all persons to be affected thereby; and no person under legal disability to contract, is capable of such consent."

Count six, Defendants violated Plaintiffs minor dependents by addressing them in attempt to collect payment. Minors are under legal disability and cannot enter into any contract or give consent because they automatically enter a plea of infancy as above constitution stated.

## CLOSING

Plaintiffs have encountered severe injuries of suffering and mental anguish from the multiple violations to their constitutionally protected and unalienable rights by Defendant's organization. Plaintiffs no longer have full faith in honesty and integrity of Defendant's organization. Defendant's organization has caused Plaintiffs to default on lease payment obligation by force, and Plaintiffs no longer wish to reside at Halston Shiloh Valley apartment community for safety reasons. See exhibits attached to support Plaintiffs claims in this civil action complaint.

## *DEMAND FOR RELIEF*

Plaintiffs demand the following relief:

1. A Judgement in favor of the Plaintiffs against Defendant's organization for damages incurred as follows:
2. For general damages in the amount of $500,300.
3. Defendant's organization to dissolve the violation fee and all late fees.
4. Plaintiffs also demand that no defaming files be entered by the Defendant's organization into Plaintiffs Residential Files, any property management private databases, and derogatory reporting to consumer reporting agencies.
5. Defendant to honor final default notice and terminate Plaintiffs lease contract effective 01/01/2023 and any eviction proceedings must cease.
6. Plaintiffs demand for Defendant's organization to turnover rent security deposit of $300 to Plaintiffs, and judgement granted for Plaintiffs to only pay prorated rent of $1,105 and additional rent amounts to cover plaintiff's occupancy dates of January 1, 2023 through January 17, 2023. Defendant's organization must provide actual bill from utility service provider(s) of additional rent showing actual charges and charges based on square footage of apartment unit occupied by Plaintiffs.

(Respectfully submitted) Miyanna Stafford and Christina Andrews, Pro Se

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on _February 2, 2023_

Miyanna Stafford

Christina Andrews

All Rights Reserved
UCC 1-103.6 UCC 1-308, UCC 1-301 UCC 1-107

Plaintiffs:
Miyanna Stafford
1635 Old US 41 Hwy
Kennesaw, Georgia by [30152]
Tel: 470-399-9101
Email: Staffordmya@gmail.com

Christina Andrews
P.O. Box 1147
Kennesaw, Georgia [30156]

Defendants:
BIRCHSTONE RESIDENTIAL INC
ATTN: DAVID DEITZ, PRESIDENT
3501 OLYMPUS BLVD, SUITE 360
COPPELL, TEXAS [75019]
HEAD OFFICE ADDRESS: 461 FIFTH AVE, FL 16, NEW YORK, NY, 10017

BIRCHSTONE RESDIENTIAL INC
ATTN: FRANK ROESSLER, PRESIDENT
515 E. PARK AVE, FLOOR 2
TALLAHASSEE, FLORIDA [32301]

BIRCHSTONE RESIDENTIAL INC
ATTN: VAN BUSKIRK
5302 LA BRANCH STREET
HOUSTON, TX [77004]

## List of Exhibits
See Exhibits attached as listed below:

| Exhibit Name | Description |
| --- | --- |
| Exhibit A | Rental Contract- Dated 5/13/2022 (17 pages) |
| Exhibit B | Letter to Regional Manager- Dated 11/3/2022 (2 pages) |
| Exhibit C | Electronic Trash Violation Notice- Dated 11/1/2022 (2 pages) |
| Exhibit D | Email- **Valet Trash Bin Reminder**- Dated 10/5/2022 (2 pages) |
| Exhibit E | Email- **Valet Trash Collection Guide**- Dated 9/30/2022 (3 pages) |
| Exhibit F | Email- **Valet Trash Service Announcement**- Dated 9/29/2022 (2 pages) |
| Exhibit G | Halston Shiloh Valley Rental statement for November 2022- Dated 10/27/2022 with attached Screenshot of Rental Accounting ledger showing violation fee and late fee (3 pages) |
| Exhibit H | Affidavit- Dated 11/6/2022 and USPS Tracking- Tracking Number: 9581712263632313642954 and delivery confirmation (5 pages) |
| Exhibit I | Halston Shiloh Valley's Announcements (1 page) showing eviction notice date and legal fee |
| Exhibit J | Email- **1st Notice /1st Past Due Reminder**- Dated 12/5/2022 showing late fee and addressing minors of past due (1 page) |
| Exhibit K | Balance Details of rental charges for December 2022 from Resident portal (2 pages) |
| Exhibit L | Notice of Default, Three Day Opportunity to cure, and Cease and Desist- Dated 12/9/2022 And USPS tracking- Tracking Number: 70221670000121770401 and 70221670000121749865 and delivery confirmations (7 pages) |
| Exhibit M | Rental Statement for December 2022, and **Halston Shiloh Valley Rental Payment Confirmation email**- Dated 12/3/2022 with MoneyGram payment instructions from Halston Shiloh Valley resident portal– (4 pages) |
| Exhibit N | Final Notice Default- Dated December 24, 2022 |

| | |
|---|---|
| | And USPS tracking- Tracking Number: 70221670000121770371 and delivery confirmations (7 pages) |
| Exhibit O | Halston Shiloh Valley Rental statement for January 2023- Dated 12/27/2022 showing balance forward of late fee(s) (1 page) |
| Exhibit P | Vacate Notice and Return Possession – Dated January 16, 2023, and USPS delivery confirmations- Tracking Number: 70221670000121770258, 70221670000121770234, 70221670000121770241, and 70221670000121770265 (7 pages) |
| Exhibit Q | Past Due Reminder email dated January 28, 2023, addressing minor dependents (Juliyana and Skye) of past due amount $8,998.62. (2 pages) |
| Exhibit R | Final Rent Statement including move-out charges dated January 24, 2023, addressing minor dependents as responsible for all charges. (3 pages) |
| Exhibit S | Email rental payment confirmations from Halston Shiloh Valley for months August 2022-December 2022 showing rental accounting activity (15 pages) |

_Exhibit A_



**GEORGIA**
APARTMENT ASSOCIATION

**FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY**

This Apartment Rental Contract is a lease between the Owner of the Apartment Community and the Residents who are leasing the apartment. The General Provisions of the lease which follow the signatures at the bottom of this page and any separate addenda signed by the parties are incorporated into and become part of this lease. Paragraph numbers on this page correspond to paragraph numbers in the General Provisions.

**Lease Date:** May 13, 2022
**Management:** Atlantic Pacific Property Management LLC
    ☐ Owner   ☒ Management Co. as agent for Owner
**Apartment Community Name:** Ocean Shiloh Valley, LLC

**Apartment No:** 8012

**Apartment Address:** 2100 Shiloh Valley Drive, Kennesaw, GA 30144

**Residents/Tenants:** Christina Andrews       Miyanna Stafford

**Other Occupants
of Apartment:**   Juliyana O~~ ~~        Skye N~~ ~~ T~~ ~~

**Par. 1.**  Lease Term:    12  Months and    Days
          Beginning Date: 05/13/2022         Ending Date:  05/12/2023
**Par. 3.**  Rent Due Monthly:      $   2016.00
          Pro Rated Rent Due at Lease Signing:  $   1235.61
          Dates of Prorated Rent:    05/13/2022  to   05/31/2022
          Month to Month Fee:    $
          Rent is Payable to: Shiloh Valley Overlook
**Par. 4.**  Late Fees and Insufficient Funds Fees:
          Date on Which Rent Is Late:    4
          Amount of Late Fee:    $  175.00   or          % of Rent
          Returned or Insufficient Check Fee: ☒ Service Fee of $   75.00   or ☐ 5% of Amount of Check plus ☐ Bank Service Fee of
          $         (amount charged by bank to management for charge back)
**Par. 5.**  Re-Key Lock Charge:    $   75.00
          Non-refundable Lease Fee:    $
          Security Deposit:      $   300.00
          Bank Name: Wells Fargo                   (Where Security Deposit Kept)
**Par. 6.**  How Much Notice Required To Non-Renew Lease Prior To End of Initial Lease Term:  60  Days
          Renewal Period          ☒ Month to Month ( 1 month at a time) Renewal  ☐ Bi-Monthly (2 months at a time) Renewal
          Notice Required to End Renewal  ☒ 30 days to end Month to Month Renewal  ☐ 60 days to end Bi-Monthly Renewal
          Period:
**Par. 7.**  Early Termination Option: Amount of Notice Required for Electing Early Termination:  60  Days Written Notice
**Par. 9.**  Disclosure Notice of Owner or Managing Agent and Equal Housing Opportunity Policy
          Name of Managing Agent or Owner: Atlantic Pacific Property Management LLC
          Address of Agent Authorized to
          Manage Apartment Community: 2100 Shiloh Valley Drive Kennesaw, GA 30144
          Name of Owner or Registered Agent
          Authorized to Receive Notices and Lawsuits: Atlantic Pacific Management
          Address of Owner or Registered Agent
          Authorized to Receive Notices and Lawsuits: 1349 West Peachtree St NE, Suite 1430 | Atlanta, GA 30309
          Corporate Name of GREC Licensee: Atlantic Pacific Property Management LLC
          GREC Corporate License No.: 65166
**Par. 17.**  Flood Disclosure:  ☐ Not Applicable  ☐ Apartment has been flooded previously
**Par. 34.**  Special Stipulations (see Page 9)

**Signatures of Parties:**
**Management:**                            **Residents:**

Atlantic Pacific Property Management LLC      **Resident:** Christina Andrews
_____      _Write_____ (Resident Signature)
Name of Owner or Management Company       **Resident:** Miyanna Stafford
**By:** _____    _Miyanna Stafford_____ (Resident Signature)
     Signature of Owner or Management Company   **Resident:** _____
**As:** _____ (Title)      _____ (Resident Signature)

                                        **Resident:** _____
                                        _____ (Resident Signature)
                                      **Resident:** _____
                                        _____ (Resident Signature)
                                        **Resident:** _____
                                          _____ (Resident Signature)

**General Lease Provisions.**

The Owner is the landlord of the property, and the Resident is the tenant. The apartment community is managed for the Owner by its Managing Agent.

The lease is legally effective on the date it is signed, regardless of whether it was signed before or after the Resident moves into the apartment. There is no conditional three day right to rescind or void the contract once it is signed, and the Resident is legally bound to pay all rent, fees, and other charges that come due, regardless of whether the Resident continues to occupy the apartment. The Lease Date is the day on which the lease was signed and became effective as a contract.

The lease is a legally binding contract that creates the relationship of landlord and tenant for the full duration of the lease term at the rental rate stated above. Any addenda signed by the Owner and Resident are also part of this Apartment Rental Contract.

The Owner provides the apartment to the Resident in exchange for payment of monthly rent. The Resident's obligation to pay rent is independent of any other obligation of Landlord in the lease.

Listed above are important terms, conditions, and payment amounts. They are listed at the beginning of the lease to provide the parties with an easy reference. Each of the first page terms correspond to important lease provisions that follow below. Paragraph references on the first page correspond to the paragraph number of the General lease provisions that follow.

**Important Information About Ending The Lease and Management's Right to Increase the Rent During Any Extension Period.** This lease does not end automatically at the end of the initial lease term. The Resident must give a proper non-renewal notice to end the lease as provided in Par. 6, or the lease will be extended or renewed for an additional period of time stated in Par. 6. The lease continues to renew until the proper non-renewal notice is given. If the lease is renewed or extended, the Resident will be responsible for paying an additional Month-to-Month Fee and may also pay a higher rent than the rent specified in Par. 3, if Management gives notice of the higher rent amount.

The apartment shall only be occupied by Residents and the occupants listed on page 1, and any other occupants not listed above are unauthorized to live in the apartment.

1. **Term.** The initial lease term of the lease is for the number of months and days specified in Par. 1. The initial term of the lease begins and ends at noon on the days specified in Par. 1 but will be automatically renewed on either a month to month or bi-monthly basis as stated in Par. 6. RESIDENT MAY NOT TERMINATE THIS LEASE PRIOR TO THE END OF THE INITIAL TERM EXCEPT IN STRICT COMPLIANCE WITH PARAGRAPH 7 or as otherwise provided by law.

2. **Possession.** Rent shall abate until possession is granted to Resident. Resident may void or rescind this lease if possession is not granted within seven (7) days from the start of the lease term. Management is not liable for any delay in possession. Resident shall give Management written notice of his or her election to void or rescind the contract.

3. **Rent.** Resident shall pay rent in advance on the 1st day of each month at the management office as provided in Par. 3. The first month's prorated rent shall be due at the time this lease is signed as provided in Par. 3. If this lease is extended or renewed under Paragraph 6 without signing a new lease, Resident shall owe a month-to-month fee in addition to the monthly rent due during any extension or renewal period.

   CASH PAYMENTS WILL NOT BE ACCEPTED, AND NO MANAGEMENT EMPLOYEE IS AUTHORIZED TO ACCEPT A CASH PAYMENT UNDER ANY CIRCUMSTANCES. RESIDENT MAY NOT RELY ON ANY STATEMENT MADE TO HIM BY A MANAGEMENT REPRESENTATIVE THAT CASH WILL BE ACCEPTED.

   All rent shall be paid by personal check, cashier's check, or money order. Management shall have the right to establish or provide for payment by credit card, debit card, electronic funds transfer, online payment portal, or designated online payment system and software, but Resident does not have the right to make payments by these means unless specifically authorized by Management. Management shall have the right to designate the specific manner or form of payment that will be accepted, and no other form of payment shall be acceptable than those specified by Management. Checks and money orders shall be made payable to the order of the business entity specified in Par. 3. Third party checks (those which are made payable to someone other than Management) and partial payments are not allowed. All other damages, utilities, fees, or charges owed by Resident and due under this lease are considered to be additional rent.

   The amount of rent specified in Par. 3 is the amount due each month unless Management has given the Resident a rental concession or discount from the rent, either in the Special Stipulations to this lease or in a separate addendum. If there are rental concessions granted, the Resident will or may lose them if in default or breach of this lease and will be obligated to pay the full amount of rent specified in Par. 3. If in default or breach of the lease, the Resident may have to repay the rental concessions under certain specified conditions.

4. **Late Payments and Checks with Insufficient Funds.** Time is of the essence. In Par. 4, late fees shall be due in the amount specified. After close of business on the last day of the grace period specified.

   Resident shall pay Management an insufficient funds check service for each returned or NSF check, plus an additional fee equal to the fee charged to Management by the bank. If no box is checked in Par. 4 that specifies the amount of the service fee, then the insufficient funds service fee is five per cent (5%) of the face amount of the check, plus the fee charged by the bank. At Management's option, all late rent, NSF checks, and future rents due after an NSF check must be paid by money order or certified funds from a bank. The parties agree that bank service, NSF, and late fees are reasonable compensation for delay, administrative costs, and time in collecting past due rent, are not penalties, and that such costs are difficult to estimate accurately.

5. **Lease Fees & Security Deposit.** Resident must pay the amounts specified in Par. 5 for re-keying locks, any non-refundable lease fees, or security deposits. A re-keying lock fee is due for each lock that must be re-keyed if all keys are not returned. The non-refundable lease fee is not a security deposit, is not refundable, and does not reduce Resident's liability for unpaid rent, damages exceeding normal wear and tear, or other charges that come due under the lease. Any security deposit will be refunded as provided by law but may be applied to any charges due under this lease. The deposit will either be protected by a surety bond on file with the Clerk of Superior Court or deposited in the bank specified in Par. 5. Interest earned on such deposits belongs to Management.

   Management shall have the right to apply any security deposit held to money or a debt owed by the Resident to Management. Management is not restricted to or limited in how the security deposit is applied if money is owed, and the deposit may applied to rent, damages exceeding normal wear and tear, unpaid utilities, or any other fee, charge, or debt owed by Resident. Management may apply a pet or animal deposit to unpaid rent or damages exceeding normal wear and tear that were not caused by a pet or animal.

   Resident shall have no right to use or designate a security deposit as payment of rent or other fees and charges which are due, as provided by O.C.G.A. 44-7-33(b). Resident agrees to cooperate with Management in scheduling and performing Move-In and Move-Out Inspections and noting any existing damages or objecting to Management's list of damages exceeding normal wear and tear.

Copyright © 2020 - Atlanta Apartment Association, Inc. - Form # 1301
All Rights Reserved

**6. Renewal Term and Notice of Non-Renewal to End the Lease.** Either party may non-renew and terminate this lease at the end of the initial term by giving a written non-renewal notice prior to the end of the initial lease term. If such non-renewal notice is not given, then this lease will be extended as provided in Par. 6 on a either a Month-to-Month basis (one month at a time) until either party gives a proper 30 day notice; or on a Bi-Monthly basis (two months at a time) until either party gives a proper 60 day notice in writing that terminates the lease. Unless otherwise allowed by Landlord, the lease shall terminate at the end of a calendar month.

Management shall have the right to increase the rent due in any extension or renewal term by giving written notice at least 15 days prior to the date on which a non-renewal notice must be given in order to end the initial term or any subsequent renewal or extension period.

If not specified in Par. 6, then a 30 day written notice is required to end the initial term or any renewal or extension period as of the end of a calendar month.

Management employees are not authorized to accept a verbal notice of non-renewal or termination from the Resident, and the Resident has no right to rely on a Management employee's statement that a verbal notice is acceptable. Resident's non-renewal or termination notice must be in writing, dated, signed, and specify the move-out date. Resident should confirm Management's receipt of the notice with the authorized signature of a Management representative using Management's notice of intent to vacate form. Resident should keep a signed receipt of the non-renewal notice for his personal records in case of any dispute as to whether such notice was given and received. If Resident does not obtain a signed receipt of such notice from Management, or if Management does not have a signed original non-renewal notice from Resident, then it will be presumed that Resident failed to give a proper written notice.

**7. Resident's Early Termination Option.** Resident can end all liability for rent under this lease (but not liability for damages exceeding normal wear and tear, or liability for unpaid utilities) and vacate before the end of the initial lease term stated in Par. 7 only by doing all of the following things required in this paragraph. If all of the following conditions are not performed, then the lease remains in effect for the full term, and Resident shall be liable for breach of the rental agreement as provided in Paragraph 26. If Resident skips, abandons, or is evicted from the apartment without complying with this paragraph, then Resident is in default and responsible for rent and liquidated damages (if applicable) as provided under Paragraph 26, any other fees or charges due, and all damages and cleaning fees in excess of normal wear and tear. Management employees are not authorized to make a verbal statement that waives the notice and termination fees, and the Resident has no right to rely on a Management employee's statement that Resident will not have to pay such fees or comply with this provision in order to terminate the lease early. Any waiver of the notice or fees required under this provision must be in writing, dated, and signed by all parties. Resident's election to use or not use this provision is purely voluntary.

To end the lease early, Resident MUST do EACH of the following: 1) pay all monies currently due; 2) give written notice in the amount specified in Par. 7 of intent to vacate prior to the first day of the month and to take effect as of the last day of a calendar month; 3) pay all rent due through the notice period preceding the early termination date; 4) pay an additional early termination or lease cancellation fee equal to one month's rent as liquidated damages; vacate the leased premises on or before the specified termination date, remove all occupants and possessions, and physically hand the keys to a Management representative; and 5) abandon, waive, and release a claim to the return of any security deposit, which shall become Management's.

If the length of the Early Termination notice is not specified in Par. 7 on the first page, then a 30 day written notice is required. Resident can move-out earlier than the termination date following the notice period in Par. 7, but Resident must turn in all keys, remove all occupants and personal property, pay all rent due through the required non-renewal notice period, pay the one-month termination or lease cancellation fee, and comply with all other requirements. Keys must be physically handed to a representative of Management and may not be left in the apartment or a night rent drop box.

If Resident elects to exercise his or her right to Early Termination, Resident is not entitled to a refund of any rent, notice or termination fees, or security deposit, even if the apartment is re-let to a new Resident prior to the end of the notice period. Resident's election to exercise this early termination option either by giving proper notice and paying all sums due or by giving proper notice and signing an agreement to terminate early and pay the sums due at a later date are binding and shall not be reduced or set-off by any money or rent Management receives from re-letting the apartment to a new or subsequent Resident.

**Military Transfers and Lease Terminations.** A Resident (including a Resident's spouse) who is a service member on active duty or is called to active duty in the regular or reserve component of the U.S. Armed Forces, U.S. Coast Guard, or National Guard, shall have the right to end this Apartment Rental Contract early by giving a 30 day written notice, paying all rent due through the notice date, and providing a copy of the official military orders or written verification signed by the service member's commanding officer or by providing base housing orders as provided in O.C.G.A. Section 44-7-22, if the service member is:

1. Ordered to federal duty for a period of 90 days or longer;
2. Receives a permanent change of station orders to move at least 35 miles away from the rental housing;
3. Is released from active duty after leasing housing and must move 35 miles or more away from the service member's home of record prior to entering active duty;
4. After entering into this rental agreement, the service member becomes eligible to live in government quarters or the failure to move to government quarters will result in a forfeiture of the service member's basic allowance for housing;
5. Receives temporary duty orders or temporary change of station orders or state active duty orders for a period exceeding 60 days that is at least 35 miles away from the location of the rental housing; or
6. Receives orders after signing the lease but before taking possession of the rental housing.

**Domestic Violence and Lease Terminations.** A resident who is a victim of family violence shall have the right to end this Apartment Rental Contract by giving a 30-day written notice, paying all rent due through the notice date to protect resident or his or her minor child.

To terminate this lease early due to domestic violence, resident must return possession to Management by returning the keys and produce the following required documents to Management: 1) if Resident obtains a Temporary Protective Order (TPO) *ex parte*, then resident must also produce a copy of a police report to accompany the order; 2) if the TPO is not *ex parte* or the order is a permanent protective order, then resident must produce the order granting protection from family violence;

If resident obtains a family violence protective order for either themselves and/or their child, who may not be a tenant or a named occupant on the lease, resident may provide a 30-day written notice and terminate the tenancy, provided the required documents are given to Management and their keys are returned.

If resident vacates the premises immediately after giving proper notice to terminate the lease due to domestic violence and providing the required documents to Management, the resident remains liable for all rent, utilities, and other charges due for an additional 30 days from the date resident gives notice, produces the required documents, vacates, and returns the keys to Management; however, resident shall not be required to pay any termination fee or liquidated damage fee.

If resident executes this lease, but has not yet taken possession of the premises, then resident may terminate the lease prior to taking possession, by providing at least 14 days written notice and providing a copy of the family violence order and a copy of the police report, if the order was obtained *ex parte*.

Copyright © 2/2020 - Atlanta Apartment Association, Inc. - Form # 1301
All Rights Reserved

Any Co-tenant and guarantor, who is the alleged aggressor or accused of family violence, shall remain liable to the terms of the lease even when the victim of family violence properly terminates the lease and vacates.

**8. No Assignment/Subletting.** Resident may not sublet or assign the lease.

**9. Disclosure Notice of Owner or Managing Agent and Equal Housing Opportunity Policy.**

The name and address of company or party authorized to manage the apartment community for the owner is specified in Par. 9. The name and address of the owner or owner's registered agent who is authorized to receive notices and lawsuits against the Landlord is specified in Par. 9. Lawsuits filed against the owner or Management shall be filed and served as provided by law or as contractually agreed to by Resident.

The Corporate Broker's Name of the Licensed Managing Agent and Broker's license number as required by the rules of the Georgia Real Estate Commission (Ga.R. & Reg. 520-1-.10) is specified in Par. 9.

**Equal Housing Opportunity Policy.** The apartment owner and Management provide equal housing opportunity for qualified applicants and do not discriminate on the basis of race, color, religion, sex, national origin, familial status, disability, or any other legally recognized status in the State of Georgia. It is the owner's and Management's policy to provide reasonable accommodations in the apartment community's operational policies and procedures and to permit the Resident to make reasonable modifications that are necessary for the Resident and related to the disability for persons with a demonstrated disability. The Resident must request and obtain permission from the owner or management for any accommodation or modification prior to implementing the same. In general, the cost or expense of physical modifications to the apartment or apartment community is the responsibility of the Resident, unless the applicable law requires the owner or Management to absorb or be responsible for the cost of such modifications. A Resident or occupant with a demonstrated disability is allowed to have an assistance animal to assist with the person's disability. A disabled Resident or occupant is allowed to have an assistance animal to assist with the person's disability. A disabled Resident or occupant is allowed to have an assistance animal which has not been trained as a service animal unless the animal has a history of dangerous, vicious, or unsafe behavior. If the nature of the disability is not obvious or apparent or the manner in which the animal will provide assistance is not clear, Management has the right to request additional information regarding how the animal will assist with the resident's disability. The Resident does not have an absolute right to the specific accommodation or modification requested, and Management has the right to offer an substitute or alternate accommodation or modification with conditions that will provide adequate assurance for the safety, health, and well being of other Residents, occupants, social guests, invitees, and Management employees. No Additional Rent, Non-refundable Fee, or Animal Security Deposit is required from Residents or occupants who are disabled and have an approved service or assistance animal; however, the Resident is responsible for any and all damages and cleaning fees exceeding normal wear and tear caused by such animal.

**10. Utilities Are Resident's Responsibility.** Resident is responsible for payment of all natural gas, electricity, water and sewer, telephone, cable, satellite or other utilities and services to the apartment unless specified otherwise in Paragraph 34 or in a utility addendum which is made a part of this lease. Resident gives Management the right to select any utility provider and change the same without notice. Resident shall promptly establish all utility and service accounts to be paid by Resident in his name at the start of the lease and shall not allow water and sewer, electricity, or natural gas to be shut off or billed to Management. Resident shall promptly pay any billing for utilities or other services charged to Management upon notification. Resident's failure to pay all utility services or to establish an account with a utility provider is a material breach of the lease for which Management has the right to terminate the right of occupancy or lease.

**\*\*Important Disclosure Regarding Management's Right to Select the Natural Gas Marketer (Provider).** Resident (the Tenant) authorizes Management (the Landlord) to act as Resident's agent for the limited purpose of selecting the Resident's natural gas marketer, to authorize the natural gas marketer to obtain credit information on the Resident, if required by the marketer, and to enroll the Resident on the marketer's standard variable price plan for which the Resident is eligible, unless the Resident chooses another price plan for which he or she is eligible. Resident acknowledges that Management may have a business relationship with the natural gas marketer that may provide for a financial or other benefit to Management in exchange for the Resident's enrollment with the Marketer.

**11. Fire and Other Casualty.** This lease will end if the apartment is uninhabitable due to fire as long as the fire was not caused by or the responsibility of Resident or Resident's occupants, family, or social guests. If Resident or his occupants, family, or social guests were responsible for the fire and the premises are uninhabitable, then Resident must vacate the apartment and will still remain liable for the rent and damages.

Management shall have the right to terminate the occupancy or lease of Resident if Resident or Resident's occupants, family, social guests, or invitees caused or were responsible for causing a fire to the apartment or any portion of the apartment community. Resident has no right to transfer to another apartment in the community or to remain in the apartment community if Resident or Resident's occupants, family, social guests, or invitees were responsible for or caused the fire. Resident may be eligible for transfer to another apartment in the apartment community if the Resident is qualified, there is a suitable apartment available, and Resident or Resident's occupants, family, social guests, and invitees did not cause the fire.

Resident is responsible for the cost of repair, replacement cost, and all expenses required to repair or replace the equipment, building, or property damaged by a fire which Resident or Resident's occupants, family, social guests, or invitees caused. Resident is liable to and shall indemnify, defend and hold harmless Management and the owner for any damages or repairs caused by a fire which was caused by Resident or Resident's occupants, family, social guests, and invitees.

This lease shall end if the premises are destroyed or otherwise rendered uninhabitable due to an Act of God or any other catastrophic event or casualty that was not the responsibility of Resident or Resident's occupants, family, social guests, or invitees.

The Resident shall not continue to occupy an apartment which is rendered uninhabitable due to fire, Act of God, or other catastrophic casualty and must remove all personal property and return possession to Management.

**12. Hold Over/Trespass.** Resident must promptly vacate the apartment and deliver possession and all keys to Management upon any termination or non-renewal of this lease. Keys must be physically handed to a representative of Management and may not be left in the apartment or in the overnight rent drop box at the Management office. The apartment must be delivered to Management in clean condition and good repair.

If Resident does not vacate the premises and return possession to Management after termination, non-renewal, or expiration of the lease, then Resident shall pay to Management rent at two (2) times the current rental rate for each day held over past the termination date.

After termination, non-renewal, or expiration of the lease, Resident is a tenant at sufferance.

After vacating the premises based on non-renewal, termination, eviction, or upon receiving a criminal trespass notice under O.C.G.A. § 16-7-21 from Management, Resident shall not return to any portion of the apartment community. Resident shall not permit entry of any person as his social guest or invitee if notified that his guest's or visitor's presence in the apartment community is subject to criminal trespass under O.C.G.A. § 16-7-21. Management may terminate the lease or right of possession of any Resident who allows an unauthorized person access to his apartment or the community in violation of this provision or paragraph 14. Management's rights under this paragraph shall continue and survive independently beyond expiration or termination of the lease or Resident's right of occupancy of the apartment.

13. **Right of Access.** Management may enter the apartment without notice during reasonable hours to inspect, maintain, and repair the premises. Management may enter the apartment at any time without notice to prevent injury or damage to persons or property. Resident authorizes Management to show the apartment to prospective Residents once Resident has given or received a notice of non-renewal or termination.

14. **Resident's Use of the Apartment and Conduct.** Resident shall use the apartment and apartment community only for residential purposes and not for business or commercial purposes.

Resident, all occupants, and Resident's family, social guests, and invitees must comply with all laws. No portion of the apartment or apartment community shall be used by Resident or Resident's occupants, family, social guests, or invitees for any disorderly, disruptive, abusive, or unlawful purpose. Nor shall they be used so as to disrupt the quiet enjoyment of any other Resident or their occupants, family, and social guests. Resident and Resident's occupants, family, social guests, and invitees shall not commit any crime in the apartment community.

Resident is liable for the conduct of and for any damages exceeding normal wear and tear caused by his family, occupants, social guests, and invitees. Resident shall not allow his occupants, family, social guests, and invitees to commit a crime or violation of the lease and addenda and must take affirmative, corrective action and notify Management of any such violation or misconduct.

The sale, manufacture, distribution, or possession of any illegal drugs in the apartment community is prohibited.

Resident must maintain the apartment in a clean and sanitary condition and must not cause or allow any damages exceeding normal wear and tear or infestation of vermin, insects, rodents, or other pests. Noxious or offensive smells are not permitted, and Resident shall be liable for damages exceeding normal wear and tear for the repair or replacement of any carpet, flooring, ceiling, or walls that are permeated with noxious or offensive odors, water, or mold. Resident shall not leave or dispose of trash, garbage, or other materials in hallways, breezeways, patios, balconies, or common areas of any portion of the apartment building or community. Resident shall promptly take trash, garbage, or refuse to the proper dumpster, compactor, or trash collection area and properly dispose of organic and inorganic material as provided by law and as provided by the community rules.

Resident and Resident's occupants, family, social guests, and invitees shall abide by and follow all community rules and regulations. Management shall have the right to prohibit smoking of cigarettes, pipes, cigars, or tobacco inside the apartment or any portion of the apartment community property under its community rules and regulations. Smoking of tobacco products in the apartment is prohibited unless expressly authorized and allowed by the community rules and regulations.

Resident shall operate all motor vehicles in a safe and lawful manner in the apartment community. Resident shall not violate any parking rules and regulations and shall not exceed 15 mph in any parking lot, street, exit, or entrance of the apartment community. Resident must park only in authorized spaces and places and shall not park at any place that obstructs traffic, is unsafe, or is prohibited. Resident shall not operate, park, or store, any illegal, unauthorized, or uninsured motor vehicle or equipment on any portion of the apartment community. Resident shall not abandon a motor vehicle in the apartment community. Resident shall not store, keep, or dispose of any substance or material on any portion of the apartment community that is hazardous to the health, safety, or welfare of any person. Resident shall not dispose of any batteries, chemicals, environmentally hazardous, or unsafe material in any trash receptacle, dumpster, compactor, or any portion of the apartment community.

Resident, and Resident's occupants, family, social guests and invitees, shall act and communicate with the apartment owner, Management, Management employees, Residents, business social guests of Management, and all other persons in a lawful, courteous, and reasonable manner. Any form of verbally or physically abusive, intimidating, or aggressive behavior directed at the apartment owner, Management, Management employees, or any other person is prohibited. Resident, his social guests and occupants shall not interfere with the daily business operations of the apartment community or job duties of Management or its employees. When notified by Management, Resident shall be prohibited from entering or contacting any Management or corporate office or employee and must conduct all further communications in writing.

Resident shall not distribute petitions, flyers, or solicitation notices to other Residents in any manner other than through lawful use of the United States mail. Resident is prohibited from committing business libel or slander or making untruthful, unfair, or misleading statements to others about the apartment owner, Management, Management employees, or the apartment community. Resident shall not commit waste to the apartment or apartment community and shall not commit any act nor fail to take any action that would endanger the life, health, safety, welfare or property of any other person in the apartment community. Resident must allow Management and vendors access to the apartment for the purpose of making repairs, performing service or maintenance, inspecting, and taking all other action related to the ongoing business operation of the apartment community.

Resident shall not cause or allow an infestation of bed bugs in the apartment. Resident shall not bring abandoned or discarded furniture, clothing, bedding, or other personal property into the apartment as it could introduce an infestation of pests and bed bugs.

Resident and Resident's occupants, family, social guests, and invitees shall not damage any portion of the apartment or apartment community. Resident and Resident's occupants, family, social guests, and invitees shall not touch, damage, or trigger any automatic sprinkler head.

Resident and occupants shall not use the internet or cyberspace in any manner to disparage, defame, or injure the business or business reputation of the apartment owner or Management. Resident and occupants shall not use, misuse, or appropriate the use of the owner's or Management's corporate names, logos, slogans, images, photos, internet domain names, service marks, trademarks, copyrights, or trade names. Resident and occupants shall not publish, misuse, or use any photos or video of Management employees or the apartment community or signage. Owner and Management shall be entitled to injunctive relief and damages for compensation to prevent any unauthorized publication, use or misuse, whether in part or in whole, of the corporate name, trade name, internet domain name, likeness or identity of owner or Management.

Resident and occupants shall not make, post, or publish misleading, deceptive, untruthful, groundless, false, or unfair statements or commentary about the apartment community, the Management employees, the owner, or Management on or to any internet website or domain, internet blog, internet social media, newspaper, magazine, television, radio, or other news or social media. Resident is prohibited from making, publishing, stating, or posting any statement or communication that, while partially true, lacks or fails to disclose other material facts in such a way such as to mislead the listener, viewer, or reader. Management shall be entitled to terminate the right of occupancy or lease of any Resident or occupant who violates any portion of this Use and Conduct provision.

Resident and Resident's occupants, family, social guests, and invitees shall not store, use, or discharge any fireworks or consumer fireworks in the apartment or apartment community. Fireworks are defined as any combustible or explosive composition or any substance or combination of substances or article prepared for the purpose of producing a visible or audible effect by combustion, explosion, deflagration or detonation, including but not limited to, blank cartridges, firecrackers, torpedoes, skyrockets, bombs, sparklers, roman candles and other combustibles and explosives of like construction.

Violation of this Resident's Use and Conduct provision is a material breach of this lease and constitutes a ground for terminating Resident's lease or right of possession, and Resident will be liable for any rent due through the remainder of the lease or liquidated damages (if applicable) as provided in Paragraph 26.

15. **Property Loss, Insurance, and Crime.** Management and the apartment owner shall not be liable for damage, theft, vandalism, or other loss of any kind to Resident's or his occupant's personal property, unless such is due to Management's negligence or intentional misconduct. Management and the apartment owner shall not be liable to Resident for crimes, injuries, loss, or damage due to criminal acts of other parties.

Resident must purchase a renter's insurance policy that provides liability insurance for negligent or accidental acts and omissions for which the Resident may be liable in causing injury or damage to the owner, Management, or others.

Resident should purchase property insurance for loss of or damage to Resident's own personal property. Management is not liable for any loss or damages to Resident's personal property due to theft, vandalism, bursting or leaking pipes, fire, windstorm, hail, flooding, rain, lightening, tornadoes, hurricanes, water leakage, snow, ice, running water, or overflow of water or sewage. Management shall not be liable for any injury or damage caused by such occurrences, and Resident agrees to look solely to his insurance carrier for reimbursement of his losses for such events.

Management does not market, advertise, represent, offer, or provide security or law enforcement services which will prevent crime or protect Resident or Resident's personal property. Management and the owner do not represent or guarantee that the Resident is safe from crime in the neighborhood or from crime in the apartment or apartment community. Resident agrees to look solely to public law enforcement, emergency services, or fire services for police, emergency, fire , security, or protection services.

Resident acknowledges that he or she has an obligation to exercise due care for his or her own safety and welfare at all times and that Management is not liable to Resident for the criminal acts of other persons. Resident agrees that he or she will not and cannot rely on the existence or absence of security equipment or personnel as a representation of safety from crime and understands that he or she must be vigilant and exercise caution for their personal safety at all times. Resident waives and releases the apartment owner and Management for any liability, injury, loss, or damages related to crimes committed by other persons against Resident or related to allegations that the owner or Management were negligent or failed to provide security or protection to prevent crime.

**16. Lead Based Paint Notification (LBPN).** If this apartment community was built prior to 1978, the LBPN addendum is incorporated by reference.

**17. Flood Disclosure.** Management states that the apartment has not been damaged in any manner by flooding as defined in O.C.G.A. § 44-7-20 in 3 of the last 5 years unless noted otherwise in Par. 17.

**18. Pets.** No animals or pets of any kind are permitted without a Pet, Service, or Assistive Animal Addendum. Management may enter the apartment at any time and remove any pet or animal which Management believes to be neglected, distressed, or endangered. Resident shall be liable for all costs of retrieving, caring for, and boarding of any pet or animal that is abandoned by Resident or removed by Management. Resident releases Management from liability of any kind when Management acts to retrieve or protect Resident's pets and animals which appear to be neglected, distressed, or endangered. Please see Par. 9 with respect to Management's policy on service, assistive and convenience animals for persons with disabilities.

**19. Indemnification.** Resident agrees to indemnify, defend, and hold harmless the apartment owner and Management for any loss the apartment owner or Management incur due to Resident's breach of this agreement or due to the acts and omissions of Resident and Resident's occupants, family, social guests, or invitees.

**20. Failure to Act.** Management has the right to insist on strict compliance with the terms of this lease at any time, even if it has previously delayed acting on Resident's breach of this lease. Management shall have sole discretion in granting and withholding permission or consent for Resident to perform his or her obligations under this lease in any manner that varies from the contractual requirements. Management at its option may condition, modify, or revoke any such permission or consent upon reasonable written notice and insist upon strict compliance with the lease terms.

**21. Fees and Expenses of Litigation.** In a civil action or dispossessory proceeding for breach of this lease, the prevailing party shall be entitled to attorney's fees in the amount of fifteen percent (15%) of the principal and interest owing and all expenses of litigation, including, but not limited to, court costs and administrative filing fees for evictions. All sums due from Resident to Management which are in default shall bear interest at the rate of twelve percent (12%) per annum.

**22. Notices.** All notices must be written, dated, and signed. The notice must be given personally or by certified mail, return receipt requested. Notice shall be sent to Resident at the apartment and to Management at the apartment community business office. See Par. 9 with regard to the proper address for service of lawsuits.

Resident shall send notices for repairs, service, maintenance, non-renewal, military transfers, and lease termination to the Management/leasing office located at the apartment community.

Resident shall provide Management with Resident's updated contact and address information and forwarding address at anytime requested during the lease and at the time of vacating the apartment. Resident shall provide Management with: the address of his or her new residence (where they are living); the mailing address for returning any security deposit or forwarding any notices or move-out inspection and estimate of damages and cleaning fees that exceed normal wear and tear; the name, address, and phone number of their employer; the name, address, and phone number of a person or family member who can provide updated contact information and the Resident's cell phone and e-mails. If Resident fails to provide his or her contact information and address at the time of vacating; conceals or attempts to conceal his or her address and location; moves from the State of Georgia; or cannot be located by Management, then the statute of limitation for collecting any account or money owed by Resident shall be tolled until such time as Resident provides proper notification of his address and other contact information requested.

RESIDENT'S NOTICE OF NON-RENEWAL UNDER PARAGRAPH 6 OR NOTICE OF INTENT TO VACATE AND TERMINATE THE LEASE EARLY UNDER PARAGRAPH 7 MUST BE IN WRITING AND MUST BE GIVEN SO THAT THE ENDING DATE IS ON THE LAST DAY OF A CALENDAR MONTH. VERBAL NOTICES ARE NOT EFFECTIVE AND MAY NOT BE RELIED UPON BY RESIDENT UNDER ANY CIRCUMSTANCES. MILITARY SERVICE MEMBERS MAY GIVE A NOTICE TO TERMINATE AS PROVIDED IN PAR. 7 AT ANY TIME OF THE MONTH. NO MANAGEMENT EMPLOYEE IS AUTHORIZED TO VERBALLY OR UNILATERALLY WAIVE ANY NOTICE REQUIREMENT, AND RESIDENT MAY NOT RELY ON A VERBAL STATEMENT OF MANAGEMENT THAT PROPER WRITTEN NOTICE IS NOT NECESSARY. MANAGEMENT MAY, BUT IS NOT REQUIRED TO, WAIVE THE REQUIREMENT THAT NOTICES BE EFFECTIVE ONLY AS OF THE END OF A CALENDAR MONTH.

**23. Repairs.** Resident accepts the apartment "as is" and in habitable condition suited for residential purposes. Resident accepts full control and responsibility of the apartment leased premises and agrees to maintain the apartment in a clean, safe, and sanitary condition. Management will make repairs to the apartment with reasonable promptness upon receipt of written notice from Resident. Management's repair obligations under Georgia landlord/tenant law only pertain to the apartment, and not to the common areas of the apartment community. Resident agrees and acknowledges that he or she only leased the apartment and that Resident's and Resident's occupants, family, and social guests access to amenities and common areas of the apartment community are only a permissive license to use such amenities and common areas.

Resident shall pay as additional rent for any cleaning or damages exceeding normal wear and tear to the premises caused by Resident or caused by Resident's occupants, family, social guests, invitees or licensees of the Resident and occupants that exceed normal wear and tear. Resident and Resident's occupants, family, social guests, and invitees shall not damage any portion of the leased premises or apartment community, and Resident is responsible for the cost to repair, replacement cost, and all expenses required to repair or replace the equipment, building, or property damaged. Resident is liable to and shall indemnify, defend, and hold harmless Management and the apartment owner for any damages or repairs

caused by Resident or Resident's occupants, family, social guests, and invitees. Resident shall promptly pay as additional rent with the next month's rent the costs of any repairs, replacement, or damages caused by Resident or Resident's occupants, family, social guests, or invitees upon issuance of an invoice from Management.

Resident may not alter the interior or exterior structure of the apartment or apartment community in any manner without the express written consent of Management. Please see Par. 9 with regard to Management's policy on disability modification requests.

Resident must promptly report the need for any repairs to Management in writing before Management is obligated to make any repairs. Resident must promptly report any dampness, water leaks, or mold in the apartment to Management. Resident shall properly use the heating, ventilation, and air conditioning (HVAC) system to maintain temperate conditions so as to prevent freezing of water pipes in cold weather and to prevent mold growth or excessive humidity during warm weather. Resident is required to use air conditioning during June, July, August, and September and shall not turn off the air conditioning and open windows for purposes of cooling the apartment. Resident must inspect any fire alarm and fire extinguisher at least once per month to determine whether they are in proper working condition and report to Management the need for any need for repair or replacement. Resident shall promptly notify Management of any damage to or malfunction of any door or window locks or intrusion alarm.

Resident must promptly report any evidence, knowledge, or suspected presence of bed bugs in the apartment and cooperate with Management to allow inspection and treatment of the same. Adjoining or neighboring Residents to an apartment infested with bed bugs must cooperate with Management in inspection and treatment to prevent a possible cross infestation or migration.

**24. Abandonment.** Resident shall not abandon the apartment, Resident's personal property, or motor vehicles. Title to any abandoned property (including, but not limited to, pets or animals) shall vest in Management. Management may store, sell, or dispose of abandoned property without notice.

If Resident abandons the apartment or his or her personal property contained therein, Management shall have the right to re-key, re-enter, and re-let the apartment without filing a dispossessory warrant or obtaining a writ of possession. Management is not required to file a dispossessory proceeding in order to recover an abandoned apartment or to dispose of any abandoned property found in an abandoned apartment. Management shall have sole discretion in determining whether the Resident has abandoned the apartment. Circumstances indicative of an abandonment include, but are not limited to, Resident's unexplained absence or failure to occupy the apartment; the overall appearance and condition of the apartment; Resident's statement that he or she is moving or leaving the apartment community; failure to pay rent or utilities; discontinuance of utility service; failure to respond to Management's notices, communications, or eviction proceedings; or removal of a substantial amount of Resident's personal property.

**25. Attornment, Sale, Foreclosure, Renovation, and Former Employees.** Resident's rights, or, if applicable, his employment with Management, are subordinate to any deed to secure debt, sale, or contract for sale of the property.

In the event the apartment community or any portion or building of the community is foreclosed, sold, placed under contract to be sold, or scheduled for substantial renovation, rehabilitation, or demolition, either Management or the new owner shall have the right to terminate the lease on 30 days' written notice. In the event that Management elects to terminate the occupancy or lease under this provision, then during the 30 day period immediately preceding either the termination date of Resident's occupancy or the termination of the lease, the Resident's rent shall be reduced by fifty percent (50%); however, if the Resident shall hold over beyond the termination date, then Resident shall owe the full rent due for said 30 day notice period plus hold over rent as provided in paragraph 12.

If Resident is an employee of Management and his or her employment is terminated, then this employee lease shall also terminate, any employee rental discounts shall end, and the employee agrees to vacate the premises if requested. If permitted to stay, the former employee shall pay the current market rate rent as specified by Management at the time employment is terminated.

**26. Default by Resident.** Resident's violation of this lease or any addenda constitutes a default. Violations constituting a default include, but are not limited to: unauthorized occupants; non-payment of rent; improper non-renewal or termination of the lease as required by paragraphs 6 or 7; abandonment of the apartment as prohibited in paragraph 24; providing false or misleading information in the rental application; failure to pay or continue utility service as required in paragraph 10; allowing unauthorized persons access in violation of paragraph 12; any unauthorized occupants or improper use or conduct in violation of paragraph 14; or causing damages or cleaning in excess of normal wear and tear.

Upon default, Management may terminate Resident's lease or right of possession by giving written notice and re-entering the apartment as provided by law. Notice to cure a default is not required but, if given, shall not waive Management's right to terminate or insist on strict compliance. Resident shall surrender possession of the premises to Management promptly on the effective date of any termination notice, remove all possessions and persons occupying the apartment, return all keys to Management by personally handing them to a Management representative, and restore Management to quiet possession of the leased premises.

Notwithstanding Management's termination due to Resident's default, Resident shall remain liable for all rent, hold-over rent under paragraph 12, liquidated damages (if applicable) as provided below, unpaid utilities, rental concession, lost discounts or pay-backs, damages exceeding normal wear and tear, costs of eviction, attorney's fees and expenses of re-letting incurred by Management as a result of Resident's default.

Management, at its option, may obtain possession of the apartment through a dispossessory proceeding, either with or without first terminating the lease or right of possession. Management, at its option, may also recover possession of an abandoned apartment without filing a dispossessory proceeding by changing the locks and disposing of any abandoned property.

Notwithstanding termination of the lease, commencement of a dispossessory proceeding, issuance of a writ of possession, actual physical eviction, or recovery of the abandoned premises, Resident shall remain liable for all rent accrued through the date on which possession is obtained by Management; rent through the remainder of the lease term or liquidated damages (if applicable) as provided in this paragraph; damages exceeding normal wear and tear; unpaid utilities; rental concession, lost discounts or pay-backs; costs fees, and expenses. Neither issuance of a writ of possession, actual physical eviction, or retaking possession of the apartment shall relieve Resident of liability for rent through the end of the lease term or liquidated damages (if applicable) under this paragraph. All rent, fees, damages and liquidated damages (if applicable) shall be due immediately upon demand for payment.

In the event of a default by Resident, the Resident shall be liable to Management for rent through the remainder of the lease term as follows. Management may either allow the apartment to remain vacant and hold Resident liable for payment of rent through the remaining term of the lease; sue the Resident for breach of the lease and for each installment of rent as it comes due through expiration of the lease; or re-enter the premises as provided by law and re-let the apartment on Resident's behalf while holding the Resident liable for any deficiency between the contract rent and rent received through the remaining term of the lease until the re-letting. Management has the right, but not the obligation, to attempt to re-let the premises on Resident's behalf.

In the event that Resident has breached or defaulted the lease and failed to terminate the lease properly as provided by law or as provided for in Paragraphs 6 or 7 of this Apartment Rental Contract, then Resident shall be liable to Management for unpaid rent due through the remainder of the lease term under this paragraph (Par. 26), and not as provided in Paragraph 7, and Management is not entitled to collect any termination (cancellation) fee or notice fee.

**Liquidated Damages In Lieu of Rent Through the Remainder of the Lease Term.** Management shall not be entitled to Liquidated damages unless the Liquidated Damages Addendum has been signed by Management and Resident to indicate that the parties desire to use liquidated damages in determining the amount of rent due through the remainder of the lease term in the event of Resident's default. In the event the parties have selected liquidated damages for determining Resident's liability due to Resident's breach, then the Liquidated Damages Addendum is incorporated herein by reference, and the parties shall execute the same as a separate addendum.

Management's re-entry to leased premises either under judicial process or by retaking possession after abandonment or surrender shall not relieve Resident of liability for payment of rent through the remainder of the lease term or liquidated damages (if applicable) that landlord is entitled to collect under the terms of this rental agreement.

Management shall have the right to terminate the lease or right of possession of any Resident or occupant of the apartment who is arrested, indicted, charged, or convicted of any felony, crime of violence, or threatened violence; robbery; theft; dishonesty; rape; child molestation; sexual offense; illegal sale, use, or possession of drugs; illegal use or possession of a weapon; stalking; arson; criminal damage to property; vandalism; issuance of bad checks; fraud; forgery; or any other crime which could adversely affect the health, safety, or welfare of other Residents or Management staff, regardless of whether the offense occurred on or off the apartment community premises and regardless of when the offense occurred. Management shall have the right to file a dispossessory action and obtain a writ of possession based on the Resident's or occupant's conduct which constitutes a criminal violation without waiting for a criminal adjudication, finding, or decision on the criminal charges.

Management shall have the right to terminate the lease of any Resident whose apartment is found to be infested with bed bugs; have a mold or water intrusion problem; be unfit for habitation; or constitute a hazard to health, safety, or welfare of any person, the apartment, the apartment community or management employees. Upon such termination, resident must promptly vacate, remove all personal property and possessions, and return possession of the apartment to Management.

**27. Privacy, Disclosure, and Consent.** Resident agrees that information about him or her that is known to Management or contained in his or her Resident file is not confidential, privileged or private. Resident authorizes Management to disclose any information known or contained in the Resident file to any law enforcement agencies who request such information either with or without a subpoena; to prospective landlords or lenders who request such information in connection with approval of any rental application or home purchase; or to persons or parties who make a request for such information using discovery procedures in a civil action or subpoena in a criminal proceeding.

Resident agrees that the apartment owner and Management shall have the right to provide information from its account and business records to any Consumer Reporting Agency to be included in the Resident's consumer file and credit history, including, but not limited to, rental history, rental payments, unpaid balances, and other information. If the Resident disputes the accuracy of the information provided, the Resident shall notify the Consumer Reporting Agency and send written notice of the dispute to Management at the address specified in Par. 9. When giving notice to Management of any dispute as to the accuracy of adverse rental information, rental payments, disputed account balance, or other disputed information, Resident agrees to provide his or her correct names on the lease, the apartment number, complete apartment address, dates of occupancy, and clear details as to the basis of such dispute that the Consumer Reporting Agency and Management will have sufficient information to investigate, evaluate and respond to the dispute.

Resident agrees that Management shall have the right to pursue collection of any sums alleged due from Resident through employment of independent contractors as collectors and that such sums may be reported to any consumer reporting agency (credit bureau) and shown on Resident's credit report. Resident agrees that variances or inaccuracies in the amounts submitted for collection or reported to any credit bureaus do not constitute a violation of any federal or state laws pertaining to reporting or collection of such debts and that the amount alleged due may be amended or corrected at any time. Resident agrees that Management or any such collector or collection agency is expressly authorized to contact Resident by phone or mail to notify Resident of the debt or attempt collection of the same and to communicate with third parties regarding the existence of the debt, the location of the Resident, or the Resident's ability to pay the debt. Resident agrees that Management or any such collector is expressly authorized to obtain a consumer report (credit report) on Resident and to obtain information on Resident's location and employment in connection with the collection of any amounts claimed due under this lease. Management's and collector's rights under this paragraph shall continue and survive independently beyond expiration or termination of the lease or Resident's occupancy of the apartment.

Resident(s), their occupants, family members, and social guests hereby authorize and grant Management, their contractor(s), employee(s), and or any third parties hired by Management, permission to take, use, and publish photographs and/or videos of Resident(s), their occupants and social guests, including but not limited to, their minor children, at events and/or activities in the common areas of the apartment community. Management is permitted to use such photographs or video for print, publication, copyright, online social media and video-based marketing materials, as well as any other form of publication or use at Management's sole discretion. Resident(s), their occupants and social guests, including their minor children, release and hold harmless Management from any reasonable expectation of privacy or confidentiality associated with the images and videos taken and used by Management. Resident(s) and their occupants, family members, and social guests acknowledge and agree they will not receive any type of financial compensation, ownership or royalties with the taking, use, marketing, or publication of any photographs or videos.

Resident(s) hereby expressly authorize Management, and its successors, assigns, agents, attorneys, insurers, representatives, employees, officers, shareholders, partners, parents, subsidiaries, affiliated entities, and all agents and representatives, including any collection agency or debt collector hired by any of the preceding persons or entities, and all corporations, persons, or entities in privity with any of them (hereinafter collectively referred to as the "Authorized Entities") to communicate with Resident(s) for any reason related to the services provided by them or services to be provided in the future by them, including collection of amounts owed for said services, using an automatic telephone dialing system or an artificial or prerecorded voice at the telephone number or numbers Resident(s) provide.

Resident(s) further expressly consent and authorize the Authorized Entities to communicate with Resident(s) at any phone number or email address or other unique electronic identifier or mode that Resident(s) provide to any Authorized Entity at any time, or to use any phone number or email address or other unique electronic identifier or mode that any Authorized Entity finds or obtains on its own which is not provided by Resident.

Any Authorized Entity may communicate with Resident(s) using any current or future means of communication, including, but not limited to, automated telephone dialing systems, artificial or pre-recorded voices, SMS text messages, other forms of electronic messages, electronic mail directed to any internet domain address, electronic mail directed at a mobile telephone service, cellular telephone services, internet or world wide web addresses including social and business networking internet sites, or electronic messages or mail otherwise directed to Resident(s) through any medium. Resident(s) authorize any and all of the communication methods described in this paragraph even if Resident(s) will incur a fee or a cost to receive such communications. Resident(s) further promise to immediately notify the Authorized Entities if any telephone number or email address or other unique electronic identifier or mode that Resident(s) provided to any Authorized Entity changes or is no longer used by Resident.

**28. Definitions.** The term "Resident" includes all tenants or other persons who signed or are obligated under the lease. "His" shall also mean "her" when applicable. "Resident" refers to the tenant. The term "Management" may refer to the owner of the apartment community or to the managing agent who is under a Management contract to operate the apartment community on behalf of the owner. The legal ownership entity is different from the Management entity. The owner's managing agent may or may not have any ownership interest in the apartment community and may be an entirely independent contractor which operates the apartment community for the owner for a fee. "Occupants" are persons who are living in the apartment rental with the Resident and disclosed in the lease but have not signed the lease.

The term "occupants" means persons who did not sign the lease but were disclosed and authorized to live in the apartment on a full time basis. Occupants could include family members of the Resident, but is not limited to family members, and includes roommates or other persons who are authorized to live in the apartment as disclosed in this lease. "NSF" means checks that are dishonored or returned by the bank unpaid, and is also referred to as "not sufficient funds." "Skip" means to vacate or abandon the leased premises in violation of this lease, either with or without turning in all keys and either with or without removing all personal property. "Notice period" refers to the length of time required in paragraph 6 or 7 or any other provision before a notice can take effect. The word "lease" means the Apartment Rental Contract which creates the relationship of landlord and tenant between the Resident and Management. "Leased premises" refers to the apartment Resident rented, and is also referred to as the "premises" or "lease premises," but does not include any of the common areas or other portions of the apartment community property. The term "leased premises" does not include any portions of the apartment community outside of the apartment rental unit as the Resident only has a permissive license to use the other areas and amenities of the apartment community in conjunction with the rental of the apartment. "Termination date" is the date following a notice period or the date on which Resident's lease or right of possession terminates as specified either in a non-renewal notice or a lease termination notice from Management based on Resident's default. A "social guest" is any person who is present in the Resident's apartment or on the apartment community property by express or implied invitation of the Resident or Resident's occupants, other social guests, or family members and includes anyone temporarily living or visiting Resident. The term "social guest" includes, but is not limited to, visitors and family members visiting or present in the apartment or apartment community. An "invitee" refers to a business guest or visitor who is present in the apartment or the apartment community with the express or implied invitation of the Resident for the purpose of conducting or soliciting business with or for the Resident, occupants, or social guests of the Resident. The "trade name" is the name of the apartment community and is the name or alias under which the legal owner of record does business and operates the apartment community. A "default" or "breach" of the lease and addenda means a violation of the lease provisions and gives Management the right to terminate the Resident's occupancy or lease. "GREC" means the Georgia Real Estate Commission.

**29. Usufruct.** This lease only creates the relationship of landlord (Management) and tenant (Resident) and does not create any ownership or transferable rights in real estate. This lease is a "usufruct," and not an estate for years.

**30. Entire Agreement.** This lease, any referenced addenda, and any addenda separately signed or referring to the lease or apartment shall constitute the entire agreement between the parties, and no prior negotiations, representations, or oral statements are binding. This lease may not be modified except with the express written consent of Management. The Resident is legally obligated under the terms and conditions of any addenda which he or she signed, and the same are part of and incorporated by reference into this lease.

**31. Joint and Several Liability.** Each person, corporation, or roommate who signs this lease or any guarantor under a separate guarantor's agreement is jointly and severally liable for all rent or other charges which come due. Management may look to any Resident or guarantor for payment of all or a part of any obligation due without first suing or attempting to collect from any other responsible party. Management and the owner or any collection agency or attorney representing the owner or Management shall have the right to settle in whole or part all or a portion of any debt owed by one Resident without releasing or waiving its claim for the balance of the debt against another Resident, co-signor, or guarantor. Settlement or release of one Resident or Guarantor shall not release the other Resident or Guarantor from liability for the debt owed.

**32. Agency Disclosure.** Management is acting on behalf of the owner of the apartment community in exchange for compensation.

**33. Know Your Neighbors.** Certain individuals convicted of certain sex-related crimes are required to register their name and current address on an index maintained by the state or county in which they reside. You may access that index in order to determine whether any such individuals live in proximity to a certain location. The public may access the internet to view all sex offenders registered in Georgia. The Statewide Sex Offender Register can be obtained through the Internet at http://gbi.georgia.gov/georgia-sex-offender-registry. The public may also contact the local Sheriff to view a list of the sex offenders listed in their county.

**34. Special Stipulations.** Any special stipulations specified in Par. 34 shall control and supersede and control over conflicting provisions in the text of this lease.

Internet Fee $39.99 per month. In exchange for $14 dollars per month, Landlord waives the Resident insurance requirements in the Apartment Rental Contract and Pet Service, or Assistive Animal Addendum and agrees to provide Resident with certain benefits as specified in the Property Loss Benefit Addendum.



Addendum Date: **May 13, 2022** . **Atlantic Pacific Property Management LLC** ["Management"] ☐ as Owner of ☒ as Agent for the Owner of **Ocean Shiloh Valley, LLC**

["Community Name"] enters into this Community Rules Addendum to the Apartment Rental Contract ["the Lease"] with **Christina Andrews, Miyanna Stafford**

_____ ["Residents"], pertaining to

Apt. No. **8012** located at **2100 Shiloh Valley Drive, Kennesaw, GA 30144**

["Address"]. This Addendum is part of the Apartment Rental Contract dated **May 13, 2022** ["Date of Lease"].

(a) **Signs:** Resident shall not place or display any signs, lights, decorations or markings on the outside of the apartment, common areas or buildings in the apartment community.

(b) **Locks:** Resident is prohibited from adding locks to, changing or altering locks installed on the doors of apartment, without prior written permission of management.

(c) **Entrances, Hallways, Walks, and Lawns:** Entrances, hallways, walks, lawns and other public areas shall not be obstructed, used for storage, or used for any purpose other than ingress and egress.

(d) **Antennas:** Satellite dishes, antennae, and aerials shall not be placed or erected on the roof or exterior of buildings without prior written consent.

(e) **Parking:** Resident agrees to abide by all parking regulations established by management. No motorcycles, trucks, vans, campers, recreational vehicles, boats, trailers, mobile homes, buses or mechanized equipment may be allowed on the property without management's prior approval. If management has designated spaces for resident to park or areas for boats, trailers, campers or other vehicles, resident agrees to park only in those spaces so designated. Non-operable, abandoned or unauthorized vehicles are not permitted on premises. Any such non-operable, abandoned or unauthorized vehicle may be removed by management at the expense of the resident or other person owning same, for storage or public or private sale, at management's option, and the resident or person owning same shall have no right of recourse against management therefore. The definition of non-operable, abandoned or unauthorized vehicles shall be liberally construed in favor of management. In addition, but not limited to, their generally accepted definitions, "unauthorized" and "non-operable" shall also mean vehicles which:

1. Are noxious, offensive, unsightly, unpleasant, or unkept such as could reasonably affect the appearance or rental marketability of the property or such as could reasonably cause embarrassment, discomfort, annoyance, or nuisance to management, owners or other residents;

2. Are causing damage to the apartment community or the parking lot, including but not limited to, oil or gas leaks, seepage or spills and motorcycle kickstands which sink into the pavement;

3. Are not registered with management as required;

4. Are not properly parked between parallel lines or other lines marking spaces for parking;

5. Are blocking access to any prohibited areas, designated "no parking" areas, fire lanes, fire hydrants, ingress and egress travel lanes, entrances, exits, trash dumpsters or compactors or maintenance or service areas;

6. Are left on blocks or jack stands;

7. Appear to be in a state of disrepair;

8. Appear to be incapable of self-propelled movement;

9. Do not have a proper license tag, current license decal validation sticker, current state emissions inspection sticker or minimum applicable motor vehicle insurance.

Unauthorized, non-operable or abandoned vehicles shall not be kept, placed, stored, parked, maintained or operated in any area of the apartment community. The term "vehicle" includes, but is not limited to, both motorized and non-motorized vehicles such as automobiles, trucks, vans, motorcycles, boats, trailers, campers, mobile homes, motor homes, commercial trucks, buses and heavy motorized or mechanized equipment or vehicles. Further rules and regulations may be specified in a parking rules and regulations addendum. Said addendum is incorporated by reference herein and shall be effective regardless of whether it has been separately signed by parties hereto. An "abandoned motor vehicle" shall include, but is not limited to, any vehicle, motor vehicle or trailer which has been left unattended on the apartment community property for a period of not less than thirty days without anyone having made a claim thereto.

(f) **Storage:** No goods or materials of any kind or description which are hazardous, combustible, or would increase fire risk shall be taken or placed in storage areas. Storage in such areas shall be at resident's risk and management shall not be responsible for any loss or damage.

(g) **Balcony or Patio:** Balcony or Patio shall be neat and clean at all times. No rugs, towels, laundry, clothing, appliances or other items shall be stored, hung or draped on railings or other portions of balcony or patio. Use of cooking grills with a combustible fuel source is not permitted on balconies or patios within ten (10) feet of any building. (Section 501.7 of the Rules and Regulations for the State Minimum Fire Safety Standards adopted July 1, 1998).

(h) **Recreation and Service Areas:** Resident shall abide by all rules and regulations pertaining to use of recreational and service facilities .

Copyright © 4/2021 by Atlanta Apartment Association, Inc. - Form #9403
All Rights Reserved

(i) **Resident Liable for Actions of His Family, Occupants, Social Guests or Invitees:** Resident shall be responsible and liable for the conduct of his family, occupants, social guests or invitees. Acts or failure to act of resident's family, occupants or invitees in violation of this contract, any addenda, or management's rules and regulations may be deemed by management to be a breach by resident. Resident acknowledges and agrees to communicate and explain all addenda, rules and regulations, and the terms of this lease to his family, occupants, guests and invitees.

(j) **Window Treatments:** All window treatments shall present a neutral, uniform exterior appearance and shall not detract from the marketability or appearance of the apartment community. Resident shall not damage or remove blinds or other window treatments installed by the apartment owner and part of the apartment.

(k) **Water Beds:** Resident shall not have or keep any water beds in the apartment without prior written permission of management.

(l) **Conduct:** Resident acknowledges that all notices required to be given shall be given in writing. Resident agrees to handle his or her communications and conduct with management, including, but not limited to, leasing agents, on-site staff, maintenance personnel, or independent contractors and vendors hiredby management, and with all other residents, occupants, guests or invitees in a lawful, courteous and reasonable manner. Resident shall not engage in any abusive behavior, either verbal or physical, or any form of intimidation or aggression, directed at management, its agents, its employees or vendors or directed at any other residents, occupants, guests, invitees, or any other person on the property. If requested by management, resident agrees to promptly conduct all further business in writing. Any acts of abusive behavior whether verbal or physical by resident or resident's family, guests or invitees shall be grounds for termination of this lease. Resident agrees not to damage his apartment or any other portion of the apartment community, including, but not limited to, the physical facilities, buildings, trees or landscape. Resident shall be liable for all acts or failure to act of his family, occupants, guests or invitees which result in damages to the apartment or the apartment community property. Resident shall remain liable to management for any damages which exceed normal wear and tear and agrees to pay management promptly upon notice of such damages, notwithstanding whether the repairs have actually been made. Further, resident's acts or failure to act which results in damages to the apartment or apartment community property shall constitute a ground for termination of this lease. Any amounts due from resident because of damage exceeding normal wear and tear shall constitute additional rent which is due upon invoicing.

(m) Management shall have the right to amend, add, change, delete or modify the Community Rules upon reasonable notice to Resident at a future date.

(n) **Package Release Authorization:** As an accommodation to Resident, Management will accept packages, shipments, parcels, and other items on Resident's behalf that are delivered to the Management office. Acceptance of such items for Resident is a gratuitous bailment and not a bailment for hire. Resident authorizes Management to sign for and receive such items on Resident's behalf. Management has no obligation to deliver the items to Resident and may refuse to accept any item that appears to be damaged or improperly delivered. Resident is responsible for tracking delivery of all such items and agrees to pick them up promptly. Management will temporarily store such items in the management office. Resident releases Management of any liability for loss or damage of the item unless such loss or damage was solely due to or solely caused by Management's gross negligence.

**Signature of Parties:**

**Owner or Management**
Atlantic Pacific Property Management LLC

_____
Name of Owner or Management Company

As Landlord

By: _____
Signature of Management Representative

As: _____ (Job Title)

**Residents**

_dhite_ _____ _(Resident Signature)

Printed Name of Resident **Christina Andrews** _____

_Miyanna Stafford_ _____(Resident Signature)

Printed Name of Resident **Miyanna Stafford** _____

_____(Resident Signature)

Printed Name of Resident _____

_____ _(Resident Signature)

Printed Name of Resident _____

_____(Resident Signature)

Printed Name of Resident _____

_____(Resident Signature)

Printed Name of Resident _____

Copyright © 4/2021 by Atlanta Apartment Association, Inc. - Form #9403
All Rights Reserved



**GEORGIA**
APARTMENT ASSOCIATION

**Service Billing Addendum**

**FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY**

Addendum Date: __**May 13, 2022**__ **Atlantic Pacific Property Management LLC** ["Management"] ☐ as Owner of ☒ as Agent for the Owner of **Ocean Shiloh Valley, LLC**

["Community Name"] enters into this Service Billing Addendum to the Apartment Rental Contract with **Christina Andrews, Miyanna Stafford**

_____ ["Resident"], pertaining to

Apt. No. __**8012**__ located at **2100 Shiloh Valley Drive, Kennesaw, GA 30144**

[Address]. This addendum is part of the Apartment Rental Contract dated __**May 13, 2022**__ [Date of Lease] and amends Paragraph 10 of the Apartment Rental Contract.

If the information for a Service is filled in, then that Service will be billed directly to Resident by the Service Provider. Resident is solely responsible for payment of all utilities and services provided to the Resident or Resident's apartment, and Resident gives Management a proxy or the right to select any Service Provider to the apartment. The term "Utility Provider" also includes a Service Provider. All "fees" or "charges" are non-refundable.

1.  Services Are Billed as Additional Charges. The monthly rent due under the Apartment Rental Contract does NOT include charges for any services provided to the apartment unless specifically provided otherwise in the Apartment Rental Contract or this Addendum. Resident is solely responsible for paying the cost of all services and utilities as separate charges. Resident must pay for all services and utilities each month in addition to the amount of the base monthly rent. This addendum explains how the Resident will be billed for certain services by Management. Other services will be billed directly to the Resident from the service provider. Payment for services is due as additional rent.

A.  **Pest Control.** Pest Control will be billed ☒ to Management and then to Resident ☐ Directly to Resident by the Service Provider.
The name of the Pest Control Provider is: **Solutions**_____
The name of the Billing Provider is: **Conservice**_____
1.  Method of Calculating Charges. Resident's Pro-Rata Share will be based on:
[Check Applicable Method of Calculating Usage]
☐ a. Actual cost; or
☒ b. Estimated Usage Using an Allocation Formula.
2.  Amount of Charges and Due Date. The amount of the monthly charge for pest control is a:
☒ a. FIXED AMOUNT which ☒ WILL ☐ will NOT be billed in the Amount of $__**5.00**__.
☐ b. VARIABLE AMOUNT which WILL BE billed each month.
The amount billed is due each month on the __**1st**__ day of the month; and is payable at the office of ☒ Management ☐ Independent Billing Contractor or ☐ Utility Provider named above.
3.  Other Charges. Resident shall be responsible for paying the following fees in connection with this account:
☐ a. Account Establishment Fee $_____
☐ b. Monthly Administrative Fee $_____
☐ c. Monthly Service Fee $_____

B.  **Trash Removal.** Trash Removal will be billed to ☒ Management and then to Resident ☐ Directly to Resident by the Service Provider.
The name of the Trash Removal Provider is: **Waste Remedies**_____
The name of the Billing Provider is: **Shiloh Valley**_____
1.  Method of Calculating Charges. Resident's Pro-Rata Share will be based on:
[Check Applicable Method of Calculating Usage]
☐ a. Actual cost; or
☐ b. Estimated Usage Using an Allocation Formula.
2.  Amount of Charges and Due Date. The amount of the monthly charge for trash removal is a:
☒ a. FIXED AMOUNT which ☒ WILL ☐ will NOT be billed in the Amount of $__**10.00**__.
☐ b. VARIABLE AMOUNT which WILL BE billed each month.
The amount billed is due each month on the __**1st**__ day of the month; and is payable at the office of ☒ Management ☐ Independent Billing Contractor or ☐ Utility Provider named above.
3.  Other Charges. Resident shall be responsible for paying the following fees in connection with this account:
☐ a. Account Establishment Fee $_____
☐ b. Monthly Administrative Fee $_____
☐ c. Monthly Service Fee $_____

C.  **Cable Television.** Cable Television will be billed to ☐ Management and then to Resident ☐ Directly to Resident by the Service Provider.
The name of the Cable Television Provider is: _____
The name of the Billing Provider is: _____
1.  Method of Calculating Charges. Resident's Pro-Rata Share will be based on:
[Check Applicable Method of Calculating Usage]
☐ a. Actual cost; or
☐ b. Estimated Usage Using an Allocation Formula.

2. **Amount of Charges and Due Date.** The amount of the monthly charge for Cable Television is a:
   ☐ a. FIXED AMOUNT which ☐ WILL ☐ will NOT be billed in the Amount of $_____.
   ☐ b. VARIABLE AMOUNT which WILL BE billed each month.
   The amount billed is due each month on the _____ day of the month; and is payable at the office of ☐ Management ☐ Independent Billing Contractor or ☐ Utility Provider named above.
3. **Other Charges.** Resident shall be responsible for paying the following fees in connection with this account:
   ☐ a. Account Establishment Fee $_____
   ☐ b. Monthly Administrative Fee $_____
   ☐ c. Monthly Service Fee $_____

D. **Internet Access** Internet Access will be billed to ☒ Management and then to Resident ☐ Directly to Resident by the Service Provider.
   The name of the Internet Access Provider is: **AT&T**_____.
   The name of the Billing Provider is: **Conservice**_____.
1. **Method of Calculating Charges.** Resident's Pro-Rata Share will be based on:
   [Check Applicable Method of Calculating Usage]
   ☐ a. Actual cost; or
   ☒ b. Estimated Usage Using an Allocation Formula.
2. **Amount of Charges and Due Date.** The amount of the monthly charge for Internet Access is a:
   ☒ a. FIXED AMOUNT which ☒ WILL ☐ will NOT be billed in the Amount of $____**39.99**____.
   ☐ b. VARIABLE AMOUNT which WILL BE billed each month.
   The amount billed is due each month on the __**1st**__ day of the month; and is payable at the office of ☐ Management ☐ Independent Billing Contractor or ☐ Utility Provider named above.
3. **Other Charges.** Resident shall be responsible for paying the following fees in connection with this account:
   ☐ a. Account Establishment Fee $_____
   ☐ b. Monthly Administrative Fee $_____
   ☐ c. Monthly Service Fee $_____

2. **Late Fee.** A late fee shall be due on any payment which is not received by the __**1st**__ day after the payment's due date. Resident shall pay a late fee in the amount of $____**0.00**____ or _____ percent of the amount billed for any service payment which is received after its due date.

3. **Additional Charges.** Resident shall also pay account establishment and/or monthly service or maintenance billing fees as provided above.

4. **Change of Billing Methods or Service Provider.** Management shall have the right to change the method of billing or calculating service charges by giving Resident 30 day's written notice of the change. Management shall have the right to begin billing for services not previously billed. Unless provided for above, Resident is responsible for establishing and paying for any other service. Management shall have the right to designate or change the Service Provider at any time.

5. **Adjustments of Bills.** Management shall have the right to adjust any billing by increasing or decreasing the amounts due in subsequent months.

6. **Default.** Resident's failure to pay any service bill, late fee, account establishment charge, monthly administrative fee, or monthly service fee is a material breach of this addendum and the Apartment Rental Contract. Management has the right to refuse payment of any monthly basic rental amount unless also accompanied by a payment for any utility or service bill which is due or past due. Management shall have the same rights and remedies to enforce a default under this addendum as it has in the Apartment Rental Contract.

7. **Disclosure.** Billing and collection of fees and charges for some services may be performed on Management's behalf by an "Independent Billing Contractor" who is a third party vendor. Management will disclose the name, address, and phone number of any service billing company upon written request of Resident.

8. **First Month's Pro-Rated Billing.** Resident shall pay a pro-rated amount of any monthly charge based on the date Resident moved into the apartment. If the amount due is a Fixed Amount, payment shall be due at the time of signing the lease. If the amount is based on a Variable Amount Which Is Billed each month, at Management's option the pro-rated amount shall be due either along with the next month's rent or as an estimated pro-rated amount at the time of signing the lease. If Resident abandons the apartment, Resident will be responsible for all charges due through the time it takes for Management to obtain possession of the apartment. Resident agrees that any unpaid charges which remain due after vacating the apartment or delivering possession to Management may be deducted from any security deposit. If there is no security deposit then the last month's billing shall be due when billed.

9. **Estimated Charges.** Resident agrees that no representation or warranty has been made regarding estimated usage or charges for Variable Billing. Resident may not rely on any verbal estimate of usage or charges for any Variable Billing.

10. **Service Interruption.** Management is not liable for any loss or damages Resident may incur due to outages, interruptions, or fluctuations in services to the apartment unless such was directly and proximately caused by Management's negligence. Resident may not withhold rent or service payments because of an interruption in any services.

11. **Access to Read Meter.** If billing involves reading a meter, Resident agrees to provide Management or its Independent Billing Contractor access to the Resident's apartment, if necessary.

12. Severability. If any portion or provision of this addendum is declared to be invalid or unenforceable, then the remaining portions shall be severed, survive, and remain enforceable. The court shall interpret and construe the remaining portion of this addendum so as to carry out the intent of the parties that Resident is responsible for payment of all services used.

13. Incorporation by Reference. The provisions of the Apartment Rental Contract are by reference incorporated herein.

**Atlantic Pacific Property Management LLC**
_____
Name of Owner or Management Company

By: _____
Signature of Management Representative

As: _____ (Title)

_____
Resident's Signature

_Miyanna Stafford_
Resident's Signature

_____
Resident's Signature

_____
Resident's Signature

_____
Resident's Signature

_____
Resident's Signature

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #9501
All Rights Reserved



**GEORGIA**
APARTMENT ASSOCIATION

**Utility Billing Addendum**

**FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY**

[THIS FORM MAY BE USED FOR SUBMETERING, ALLOCATION (RUBS), OR A COMBINATION OF SUBMETERING AND ALLOCATION. IT MAY ALSO BE USED WHEN ONLY ONE OR MORE UTILITIES ARE SUBMETERED OR ALLOCATED AND THE REST ARE BILLED DIRECTLY TO THE RESIDENT BY THE UTILITY OR SERVICE PROVIDER.]

Addendum Date: __**May 13, 2022**__ **Atlantic Pacific Property Management LLC** ["Management"] ☐ as Owner of
☒ As Agent for the Owner of **Ocean Shiloh Valley, LLC**

["Community Name"] enters into this Utility Billing Addendum to the Apartment Rental Contract with **Christina Andrews, Miyanna Stafford**
_____ ["Resident"], pertaining to

Apt. No. __**8012**__ located at **2100 Shiloh Valley Drive, Kennesaw, GA 30144**
[Address]. This addendum is part of the Apartment Rental Contract dated __**May 13, 2022**__ [Date of Lease] and amends Paragraph 10 of the Apartment Rental Contract.

**Important Disclosure Regarding Management's Right to Select the Natural Gas Marketer (Provider).** Resident (the Tenant) authorizes Management (the Landlord) to act as Resident's agent for the limited purpose of selecting the Resident's natural gas marketer; to authorize the natural gas marketer to obtain credit information on the Resident, if required by the marketer; and to enroll the Resident on the marketer's standard variable price plan for which the Resident is eligible, unless the Resident chooses another price plan for which he or she is eligible. Resident acknowledges that Management may have a business relationship with the natural gas marketer that may provide for a financial or other benefit to Management in exchange for the Resident's enrollment with the Marketer.

**1.** Utilities Are Billed as Additional Charges. The monthly rent due under the Apartment Rental Contract does NOT include charges for any utilities provided to the apartment unless specifically provided otherwise in the Apartment Rental Contract or this Addendum. Resident is solely responsible for paying the cost of all utilities and services as separate charges. Resident must pay for all utilities and services each month in addition to the amount of the base monthly rent. This addendum explains how the Resident will be billed for certain utilities by Management. Other utilities will be billed directly to the Resident from the utility provider. Payment for utilities is due as additional rent.

    A. **Electricity.** Electricity will be billed ☐ to Management and then to Resident ☒ Directly to Resident by the Utility Provider.
    The name of the Electricity Utility Provider is: **Cobb EMC**
_____.

    The name of the Billing Provider is: _____.
    1. Method of Calculating Charges. Resident's Pro-Rata Share will be based on: _____
        a. Metering: or
        b. Estimated Usage Using an Allocation Formula; or
        c. Combination of Metering and Estimated Usage Using an Allocation Formula; or
        d. Actual cost.
    2. Amount of Charges and Due Date. The amount of the monthly charge for electricity is a:
        ☐ a. FIXED AMOUNT which ☐ WILL ☐ will NOT be billed in the Amount of $_____.
        ☐ b. VARIABLE AMOUNT which WILL BE billed each month.
    The amount billed is due each month on the _____ day of the month; and is payable at the office of ☐ Management ☐ Independent Billing Contractor or ☐ Utility Provider named above.
    3. Common Area Usage. The Resident's pro rata share of charges for electricity ☐ DOES ☐ DOES NOT include an allocable portion of common area usage.
    4. Other Charges. Resident shall be responsible for paying the following fees in connection with this account:
        ☐ a. Account Establishment Fee $_____
        ☐ b. Monthly Administrative Fee $_____
        ☐ c. Monthly Service Fee $_____

    B. **Natural Gas.** Natural Gas will be billed ☐ to Management and then to Resident ☐ Directly to Resident by the Utility Provider.
    The name of the Utility Provider is: _____.

    The name of the Billing Provider is: _____.
    1. Method of Calculating Charges. Resident's Pro-Rata Share will be based on: _____
        a. Metering: or
        b. Estimated Usage Using an Allocation Formula; or
       c. Combination of Metering and Estimated Usage Using an Allocation Formula; or
       d. Actual cost.
    2. Amount of Charges and Due Date. The amount of the monthly charge for natural gas is a:
        ☐ a. FIXED AMOUNT which ☐ WILL ☐ will NOT be billed in the Amount of $_____.
        ☐ b. VARIABLE AMOUNT which WILL BE billed each month.
    The amount billed is due each month on the _____ day of the month; and is payable at the office of ☐ Management ☐ Independent Billing Contractor or ☐ Utility Provider named above.

3. <u>Common Area Usage.</u> The Resident's pro rata share of charges for natural gas ☐ DOES ☐ DOES NOT include an allocable portion of common area usage.
4. <u>Other Charges.</u> Resident shall be responsible for paying the following fees in connection with this account:
   - ☐ a. Account Establishment Fee $_____
   - ☐ b. Monthly Administrative Fee $_____
   - ☐ c. Monthly Service Fee $_____

C. **Water/Waste Water.** Water and Waste water will be billed ☒ to Management and then to Resident ☐ Directly to Resident by the Utility Provider. The name of the Utility Provider is: **Cobb County** _____

_____

The name of the Billing Provider is: **Conservice** .
1. <u>Method of Calculating Charges.</u> Resident's Pro-Rata Share will be based on: __**b**__
   - a. Metering; or
   - b. Estimated Usage Using an Allocation Formula; or
   - c. Combination of Metering and Estimated Usage Using an Allocation Formula; or
   - d. Actual cost.
2. <u>Amount of Charges and Due Date.</u> The amount of the monthly charge for water and waste water is a:
   - ☐ a. FIXED AMOUNT which ☒ WILL ☐ will NOT be billed in the Amount of $_____ .
   - ☒ b. VARIABLE AMOUNT which WILL BE billed each month.
   The amount billed is due each month on the __**1st**__ day of the month; and is payable at the office of ☒ Management ☐ Independent Billing Contractor or ☐ Utility Provider named above.
3. <u>Common Area Usage.</u> The Resident's pro rata share of charges for water and waste water ☒ DOES ☐ DOES NOT include an allocable portion of common area usage.
4. <u>Other Charges.</u> Resident shall be responsible for paying the following fees in connection with this account:
   - ☒ a. Account Establishment Fee $**25.00**_____
   - ☐ b. Monthly Administrative Fee $_____
   - ☒ c. Monthly Service Fee $**8.99**_____
   - ☐ d. Monthly Storm Water Fee $_____
   - ☒ e. Final Account Billing Fee $**10.00**_____

2. **Explanation of the Method for Metering or Allocating Utilities.** Metering is based on reading of devices which actually measure the utility or service usage. Allocation is based on a formula that is tied to Resident's pro-rata estimated usage using such factors as the number of bedrooms and baths, number of persons occupying the apartment, and other factors. The Allocation formula is based on actual billing and usage by the entire apartment community or building. A combination of metering and allocation uses both methods. Allocation formulas are adjusted periodically to take into account changes in the charges by utilities to Management. Actual Cost is the amount charged for and billed for the service or utility. Resident acknowledges that management has disclosed the methodology for billing utilities and services prior to signing the Apartment Rental Contract and this Addendum.

3. **Late Fee.** A late fee shall be due on any payment which is not received by the __**1st**__ day after the payment's due date. Resident shall pay a late fee in the amount of $_____ or _____ percent of the amount billed for any utility or service payment which is received after its due date.

4. **Additional Charges.** Resident shall also pay account establishment and/or monthly service or maintenance billing fees as provided above.

5. **Change of Billing Methods or Utility Provider.** Management shall have the right to change the method of billing or calculating utility and service charges by giving Resident 30 day's written notice of the change. Management shall have the right to begin billing for services or utilities not previously billed. Unless provided for above, Resident is responsible for establishing and paying for any other service or utility. Management shall have the right to designate or change the Utility or Service Provider at any time.

6. **Adjustments of Bills.** Management shall have the right to adjust any billing by increasing or decreasing the amounts due in subsequent months.

7. **Default.** Resident's failure to pay any utility or service bill, late fee, account establishment charge, monthly administrative fee, or monthly service fee is a material breach of this addendum and the Apartment Rental Contract. Management has the right to refuse payment of any monthly basic rental amount unless also accompanied by a payment for any utility or service bill which is due or past due. Management shall have the same rights and remedies to enforce a default under this addendum as it has in the Apartment Rental Contract.

8. **Disclosure.** Billing and collection of fees and charges for some utilities may be performed on Management's behalf by an "Independent Billing Contractor" who is a third party vendor. Management will disclose the name, address, and phone number of any utility or service billing company upon written request of Resident.

9. **First Month's Pro-Rated Billing.** Resident shall pay a pro-rated amount of any monthly charge based on the date Resident moved into the apartment. If the amount due is a Fixed Amount, payment shall be due at the time of signing the lease. If the amount is based on a Variable Amount Which Is Billed each month, at Management's option the pro-rated amount shall be due either along with the next month's rent or as an estimated pro-rated amount at the time of signing the lease. If Resident abandons the apartment, Resident will be responsible for all charges due through the time it takes for Management to obtain possession of the apartment. Resident agrees that any unpaid charges which remain due after vacating the apartment or delivering possession to Management may be deducted from any security deposit. If there is no security deposit then the last month's billing shall be due when billed.

10. **Estimated Charges.** Resident agrees that no representation or warranty has been made regarding estimated usage or charges for Variable Billing. Resident may not rely on any verbal estimate of usage or charges for any Variable Billing.

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #9500
All Rights Reserved

11. Service Interruption. Management is not liable for any loss or damages Resident may incur due to outages, interruptions, or fluctuations in utilities or services to the apartment unless such was directly and proximately caused by Management's negligence. Resident may not withhold rent or utility and service payments because of an interruption in any utilities or services.

12. Access to Read Meter. If billing involves reading a meter, Resident agrees to provide Management or its Independent Billing Contractor access to the Resident's apartment, if necessary.

13. Severability. If any portion or provision of this addendum is declared to be invalid or unenforceable, then the remaining portions shall be severed, survive, and remain enforceable. The court shall interpret and construe the remaining portion of this addendum so as to carry out the intent of the parties that Resident is responsible for payment of all utilities or services used.

14. Incorporation by Reference. The provisions of the Apartment Rental Contract are by reference incorporated herein.


**Atlantic Pacific Property Management LLC**
_____
Name of Owner or Management Company

By: _____
Signature of Owner or Management Company

As: _____ (Title)

Resident _Whit_____

Resident _Miyanna Stafford_____

Resident _____

Resident _____

Resident _____

Resident _____

Copyright © 5/2019 by Atlanta Apartment Association, Inc. - Form #9500
All Rights Reserved

# Exhibit B

November 3, 2022

**TO: BIRCHSTONE RESIDENTIAL-HALSTON SHILOH VALLEY**
    **ATTN: JOHN CLARK, REGIONAL MANAGER**
    **3501 OLYMPUS BLVD, SUITE 360**
    **COPPELL, TX [75019]**
    **Certified Mail: 7022 1670 2174 9599**

**FR: CHRISTINA ANDREWS**
    **PO BOX 1147**
    **KENNESAW, GA [30156]**

Mr. Clark,

My name is Christina Andrews and I am a relatively new tenant as of 5/13/2022 at the Halston Shiloh Valley Apartments in Kennesaw, Georgia. The purpose of my reaching out to you is because I was notified via electronic mail by the Halston Shiloh Valley Management Team on 11/1/2022 in regard to a violation fee that I incurred of $200 pertaining to the new **Valet Trash Service**. The contents of the e-mail went on to state: "We have received multiple violations and pictures regarding your trash container being left in the breezeway throughout the day. This causes mess in the breezeway and a lot of stains on the concrete. It is <u>extremely unsightly</u> for other neighbors, and it is attracting pests....". This accusation was surprising to me because this was the first time <u>any</u> violation was being brought to my knowledge, as this is a service I do not use often. Also, in conclusion of the e-mail, the sender made note that it was being CC'd to my Resident file, which is damaging to my rental reputation. With this being said, I cannot accept the validity of this charge as well as the context of the e-mail because I have not left my valet trash container in the breezeway on several occasions as it is being made to seem in the e-mail. Also, I'd like to mention, if pests are in fact being attracted to my building in particular; I have always done my part as a tenant to report any pest incidents, in which I have not witnessed any influx of pests myself or in relation to any of my neighbors. Also, to make matters worse, the $200 fee for said trash violation is listed on my November 2022 Rental Statement as a "Lease Violation". This is invalid to be labeled as a lease violation in any way because the valet trash service and its associated fees are not a part of any terms, conditions, or addendums of my original lease contract with Atlantic Pacific Property Management LLC prior to the acquisition of Birchstone Residential.

    I visited the rental office on 11/2/2022 and was able to speak with Wakeelah Moore, property manager, about the issues stated in the e-mail, in which I also mentioned instances of when my trash was not picked up at all throughout the rare occasions that I have utilized the valet service. To my amazement, Ms. Moore in return stated that she was indeed aware of the same incident involving other units waste not being collected and altogether neglected by the contracted company as well. During my conversation with Ms. Moore, she confirmed that, in fact, Ms. Brittany was the individual that constructed the violation emails to be sent accordingly and proceeded to call her into the office to join the conversation. Ms. Brittany began to explain how she had many tenants to compose violation notices for and formatted a uniform e-mail to be sent, in which she made a clerical oversight of pooling these notices, resulting in sending a generalized e-mail to me and that it was a mistake. Ms. Brittany also admitted that <u>I did not</u> in fact have multiple violations. Ms. Moore then re-interjected the conversation

stating that she would personally fix the oversight in the e-mail and send the revised version to me, also to be reflected in my residential file, but that the violation would still be enforced, and this would be the only resolution that could be offered in a very desensitizing manner all while minimizing Ms. Brittany's clerical mistake by stating "She said she was sorry. I'm not perfect, and I make mistakes all the time at work". This issue has brought on undeserved stress and mental anguish as I was very upset on how the issue was being handled.

At this time, I am requesting for: removal of the violation fee of $200, and for this derogatory report to be removed from my resident file to remain in good standing with Halston Shiloh Valley. I'd also like to make it be known that my apartment unit is in walking proximity of the trash compactor, and I am more than happy to walk my trash to the compactor as I have been doing prior to the service being introduced to the community, as I do acknowledge the $10 trash compactor fee that is within my lease contract. I consider myself a good tenant ensuring my rent is paid in full, on time every month and reporting any relevant maintenance issues.

In closing, if I decide to renew my lease with Halston Shiloh Valley/Birchstone Residential, I will gladly accept all fees, terms, and conditions at that time. Enclosed you will find a copy of the original violation notice e-mail that I received. Thanks for your attention to this matter and I look forward to hearing from you. Feel free to also respond to my e-mail in my tenant file record.

Respectfully,

ucel-308
By: Christina: Andrews. without recourse & without Prejudice

 Gmail           *Exhibit C*                    Mya Stafford <​███████@gmail.com>

---

## Trash Violation Notice
2 messages

---

**halstonshilohvalley@emailrelay.com** <halstonshilohvalley@emailrelay.com>                    Tue, Nov 1, 2022 at 2:01 PM
Reply-To: halstonshilohvalley@emailrelay.com
To: s███████mya@gmail.com

> Good Afternoon,
>
> Please review the attached Trash Violation Notice.
>
> Thanks,
> Halston Shiloh Valley Management
> **Our mailing address is:**
>
> Halston Shiloh Valley
> 2100 Shiloh Valley Dr NW
> Kennesaw, GA 30144

---

📄 **8012 trash violation letter 11122.docx**
30K

---

**Mya Stafford** <s███████mya@gmail.com>                                    Tue, Nov 1, 2022 at 8:28 PM
To: Christina Andrews <c███████170@gmail.com>

Sent from my iPhone

Begin forwarded message:

> **From:** halstonshilohvalley@emailrelay.com
> **Date:** November 1, 2022 at 14:01:08 EDT
> **To:** s███████mya@gmail.com
> **Subject: Trash Violation Notice**
> **Reply-To:** halstonshilohvalley@emailrelay.com
>
> [Quoted text hidden]

---

📄 **8012 trash violation letter 11122.docx**
30K

# TRASH NOTICE

November 1, 2022

Unit: 8012

Dear Resident(s),

We have received multiple violations and pictures regarding your trash container being left in the breezeway throughout the day. This is causes mess in the breezeway and a lot of stains on the concrete. It is extremely unsightly for other neighbors, and it is attracting pests. This letter serves as notification that you have incurred a violation fee of $200. Only 1 trashcan should be placed outside your door and only AFTER 8 p.m. one additional bag may be placed on top of the trash bin and not on the ground. The can should be brought back in your home BEFORE 9 a.m. the following morning.



Thank you for your immediate attention to this matter. If you have any questions, please contact the office at 770-590-8673.

Sincerely,
Halston Shiloh Valley Management Team
Cc: Residents file

 **Gmail**     Exhibit D     Mya Stafford <a████████a@gmail.com>

**Valet Trash Bins Reminder!**
2 messages

halstonshilohvalley@emailrelay.com <halstonshilohvalley@emailrelay.com>      Wed, Oct 5, 2022 at 9:04 AM
Reply-To: halstonshilohvalley@emailrelay.com
To: st██████ya@gmail.com

Good morning!

Friendly reminder to please have your valet trash bin inside your apartment by 9:00 am every day. Trash bins left outside lead to unwanted critters, pests and bugs!

Please refer back to the collection guide we sent out last week and yesterday for reference. First violation will result in a $200 fine.

We hope you have a wonderful day!

Halston Shiloh Valley Team

**Our mailing address is:**
Halston Shiloh Valley
2100 Shiloh Valley Dr NW
Kennesaw, GA 30144



Is this email not displaying correctly?
View it in your browser

You are receiving this email because you have opted to receive notifications via email.

Unsubscribe

 **7 Day Collection Guidepdf_page-0001.jpg**
610K

Mya Stafford <st██████ya@gmail.com>
To: Christina Andrews <ca██████1170@gmail.com>

Sent from my iPhone

Begin forwarded message:

> **From:** halstonshilohvalley@emailrelay.com
> **Date:** October 5, 2022 at 09:04:33 EDT
> **To:** st██████ya@gmail.com
> **Subject:** Valet Trash Bins Reminder!
> **Reply-To:** halstonshilohvalley@emailrelay.com

[Quoted text hidden]

# A1 Valet Trash
## Your Community Trash Collection Guide

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | S |
|--------|--------|---------|-----------|----------|--------|---|

| 8 PM | 8 PM | 8 PM | 8 PM | 8 PM | 8 PM | |
|------|------|------|------|------|------|---|

## *TRASH COLLECTION BEGINS PROMPTLY AT 8PM*

### STEP 1: WASTE PREPARATION

- Bag waste in a standard trash bag, tie and set in the provided bin. Second bags are to be placed on top of the first bag in the provided bin.
- Flatten all cardboard.
- No loose debris, ripped bags or trash on the ground.
- No oversized items (i.e. furniture, large boxes etc.)
- Double bag all pet waste and baby diapers.
- Limit all bags to 25 lbs. to prevent possible tearing
- No liquid or hazardous materials.
- Three bag limit per night.



### STEP 2: PLACING YOUR BIN

- Place your provided trash bin with tied trash bag(s) outside of your door between 6 PM and 8 PM on scheduled service nights.
- If there are more than 2 bags, please use another trash bin in combination with your provided bin.
- Trash Collection begins promptly at 8 PM.



### STEP 3: BIN RETREIVAL

- Bring your trash bin back inside by 9 AM.

No Service On:

Federal Holidays, Easter, Christmas Eve and New Year's Eve

Customer Service:
**E-Mail:** customerservice@a1valettrash.com **Phone:** 678-902-4421

 Exhibit E

Gmail                                                      Mya Stafford <st██████@gmail.com>

# A1 Valet Trash Your Community Trash Collection Guide
2 messages

**halstonshilohvalley@emailrelay.com** <halstonshilohvalley@emailrelay.com>          Fri, Sep 30, 2022 at 4:38 PM
Reply-To: halstonshilohvalley@emailrelay.com
To: st██████@gmail.com

A1 Valet Trash Your Community Trash Collection Guide

# A1 Valet Trash
## Your Community Trash Collection Guide

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|--------|--------|---------|-----------|----------|--------|----------|
| 8 PM | 8 PM | 8 PM | 8 PM | 8 PM | 8 PM | 8 PM |

## *TRASH COLLECTION BEGINS PROMPTLY AT 8PM*

### STEP 1: WASTE PREPARATION



- Bag waste in a standard trash bag, tie and set in the provided bin. Second bags are to be placed on top of the first bag in the provided bin.
- Flatten all cardboard.
- No loose debris, ripped bags or trash on the ground.
- No oversized items (i.e. furniture, large boxes etc.)
- Double bag all pet waste and baby diapers.
- Limit all bags to 25 lbs. to prevent possible tearing
- No liquid or hazardous materials.
- Three bag limit per night.

### STEP 2: PLACING YOUR BIN



- Place your provided trash bin with tied trash bag(s) outside of your door between 6 PM and 8 PM on scheduled service nights.
- If there are more than 2 bags, please use another trash bin in combination with your provided bin.
- Trash Collection begins promptly at 8 PM.

### STEP 3: BIN RETREIVAL

- Bring your trash bin back inside by 9 AM.

No Service On:

Federal Holidays, Easter, Christmas Eve and New Year's Eve

Customer Service:
**E-Mail:** customerservice@a1valettrash.com **Phone:** 678-902-4421

3 9 2021

Copyright © 2022 *Halston Shiloh Valley*. All rights reserved.

**Our mailing address is:**

Halston Shiloh Valley
2100 Shiloh Valley Dr NW Kennesaw, GA 30144



Is this email not displaying correctly?
View it in your browser

You are receiving this email because you have opted to receive notifications via email.

Unsubscribe

---

**Mya Stafford <staffordmya@gmail.com>**                                    Tue, Nov 1, 2022 at 6:43 PM
To: Christina Andrews <ca███████0@gmail.com>

Sent from my iPhone

Begin forwarded message:

> **From:** halstonshilohvalley@emailrelay.com
> **Date:** September 30, 2022 at 16:38:11 EDT
> **To:** staffordmya@gmail.com
> **Subject: A1 Valet Trash Your Community Trash Collection Guide**
> **Reply-To:** halstonshilohvalley@emailrelay.com
>
>
> [Quoted text hidden]

 Gmail          $\mathcal{E}xhibit\ F$          **Mya Stafford <st████████@gmail.com>**

---

# VALET TRASH SERVICES BEGINNING OCTOBER 1ST!!!!!
2 messages

---

**halstonshilohvalley@emailrelay.com** <halstonshilohvalley@emailrelay.com>          Thu, Sep 29, 2022 at 4:31 PM
Reply-To: halstonshilohvalley@emailrelay.com
To: s████████@gmail.com

### VALET TRASH SERVICES BEGINNING OCTOBER 1ST!!!!!
We are excited to announce that we will be introducing valet trash service! Each apartment will be delivered a waste bin on 10/01/2022. The service will begin 10/01/2022.

Collection Schedule:
Sunday, Monday, Tuesday, Wednesday and Thursday. **Collection starts at 8PM**
**No Waste Collection on Friday or Saturday.**

**Step 1**: Place your bin outside your apartment **between 6PM - 8PM.**
**Step 2**: A waste collector will remove the bagged waste. **Collection starts at 8PM.**
**Step 3**: Bring your bin back inside your apartment by **9AM the next morning.**

Please follow the listed guidelines to ensure the highest quality of service:
• **All bagged waste must be placed inside the provided bin.** Second bags may be placed on-top of the first bag with the lid open. If additional bags are needed, please use another waste bin in conjunction with your provided bin that is clearly marked for waste. No bags are to be placed directly on the ground as they may leak and stain the breezeways.

• All waste is to be bagged and tied. No loose debris.

• All boxes must be flattened for collection.

• Furniture and over-sized items are not collected.

• **Waste bins must be inside your apartment between the hours of 9AM-6PM.**

• The provided trash bin belongs to your apartment unit. It is the resident's responsibility to maintain the cleanliness and upkeep of the bin.
**Our mailing address is:**

Halston Shiloh Valley
**2100 Shiloh Valley Dr NW**
**Kennesaw, GA 30144**



Is this email not displaying correctly?
View it in your browser

You are receiving this email because you have opted to receive notifications via email.

Unsubscribe

---

**Mya Stafford <s████████@gmail.com>**          Tue, Nov 1, 2022 at 6:45 PM
To: Christina Andrews <c████████@gmail.com>

Sent from my iPhone

Begin forwarded message:

**From:** halstonshilohvalley@emailrelay.com
**Date:** September 29, 2022 at 16:31:07 EDT
**To:** staffsendamya@gmail.com
**Subject: VALET TRASH SERVICES BEGINNING OCTOBER 1ST!!!!!**
**Reply-To:** halstonshilohvalley@emailrelay.com

[Quoted text hidden]

**Halston Shiloh Valley** Exhibit 67

PO Box 35, Lehi, UT 84043-0035

| | |
|---|---|
| **Mail Payment To** | |
| 2100 Shiloh Valley Dr Nw | |
| Kennesaw GA 30144 | |
| **Service Address** | |
| 2100 Shiloh Valley Dr Nw #8012 | |
| | |
| Kennesaw GA 30144 | |

| | |
|---|---|
| INVOICE # | 013552200 |
| INVOICE DATE | 10/27/2022 |
| DUE DATE | 11/01/2022 |
| AMOUNT DUE | $2,196.48 |

amount enclosed

[          ] . [    ]

For credit / debit card and eCheck payments go to
*halstonshilohvalley.residentportal.com*

    

**Christina Andrews**
2100 Shiloh Valley Dr Nw #8012
Kennesaw GA 30144

▲ PLEASE DETACH HERE AND RETURN TOP PORTION WITH YOUR PAYMENT ▲

Invoice Number : 013552200          Invoice Date : 10/27/2022          Amount Due : $2196.48          Due Date : 11/01/2022

## UTILITY SERVICE CHARGES

| utility | provider | calc | start date | end date | meter start | meter end | total usage | cost per unit | total |
|---|---|---|---|---|---|---|---|---|---|
| Common Area Electric | Cobb EMC | RUB | 08/01/2022 | 08/31/2022 | -- | -- | -- | -- | $14.45 |
| Sewer | Cobb County Water System | RUB | 08/01/2022 | 08/31/2022 | -- | -- | -- | -- | $45.18 |
| Water | Cobb County Water System | RUB | 08/01/2022 | 08/31/2022 | -- | -- | -- | -- | $37.87 |
| | | | | | | | | | $97.50 |

## LEASE CHARGES

| description | date | total |
|---|---|---|
| Property Unit Protection Fee | 11/01/2022 | $14.00 |
| Trash Reimbursement | 11/01/2022 | $10.00 |
| Pest Control Fee | 11/01/2022 | $5.00 |
| Cable Television Charges | 11/01/2022 | $39.99 |
| Utility Service Fee | 11/01/2022 | $8.99 |
| Package Concierge Fee | 11/01/2022 | $5.00 |
| Rent | 11/01/2022 | $2,016.00 |
| | | $2,098.98 |

| | |
|---|---|
| Subtotal | $2,196.48 |
| **AMOUNT DUE** | **$2,196.48** |



## rp ResidentPortal
Pay rent with a single tap.
Don't let paying rent slow you down.

**Download on the App Store**

**Resident**Utility™
*powered by Entrata*

Entrata is a third-party billing provider for your community and, like your community, is not your utility provider. Entrata calculates the individual service charges. If you have questions regarding the items in 'Lease Charges', please contact your leasing office. For other questions, please contact (877) 825-3995 Monday through Friday 9AM-5PM, Mountain Time.

Resident Portal — Kent Ledger



# Payments

**Unit 8012**

- Home
- **Payments**
- Messages & Alerts
- Announcements
- Lease Options
- Contact Property
- My Apartment
- FAQ
- Request Maintenance
- Resident Portal Feedback
- Settings

Important Links
- Logout
- Collapse

**Balance Due**
## $375.00

View

Ledger    Wallet    Auto-Payments

| | | | | |
|---|---|---|---|---|
| Dec 1, 2022 | Charge - Utility Charges - Electricity - Common Area Electric From 09/01/2022 To 09/30/2022 | Property | $11.81 | $386.8 |
| Nov 10, 2022 | Charge - Late Charges | Property | $175.00 | $375.0 |
| Nov 2, 2022 | Payment - eCheck 4371 | You | $0.10 | $200.0 |
| Nov 2, 2022 | Payment - eCheck 4371 | You | $2,196.38 | $200.1 |
| Nov 1, 2022 | Charge - Lease Violation Fees | Property | $200.00 | $2,396.4 |
| Nov 1, 2022 | Charge - Utility Charges - Electricity - Common Area Electric From 08/01/2022 To 08/31/2022 | Property | $14.45 | $2,196.4 |
| Nov 1, 2022 | Charge - Utility Charges - Water - Sewer From 08/01/2022 To 08/31/2022 | Property | $45.18 | $2,182.0 |
| Nov 1, 2022 | Charge - Utility Charges - Water - Water From 08/01/2022 To 08/31/2022 | Property | $37.87 | $2,136.8 |
| Nov 1, 2022 | Charge - Monthly Cable Television Charges - Posted from 11/01/2022 to 11/30/2022 | Property | $39.99 | $2,098.9 |
| Nov 1, 2022 | Charge - Monthly Property Unit Protection Fee - Posted from 11/01/2022 to 11/30/2022 | Property | $14.00 | $2,058.9 |
| Nov 1, 2022 | Charge - Monthly Package Concierge Fee - Posted from 11/01/2022 to 11/30/2022 | Property | $5.00 | $2,044.9 |
| Nov 1, 2022 | Charge - Rent | Property | $2,016.00 | $2,039.9 |
| Nov 1, 2022 | Charge - Monthly Utility Service Fee - Posted from 11/01/2022 to 11/30/2022 | Property | $8.99 | $23.9 |
| Nov 1, 2022 | Charge - Monthly Trash Reimbursement - Posted from 11/01/2022 to 11/30/2022 | Property | $10.00 | $15.0 |



**Payments**

Unit 8012

Balance Due
**$2,396.48**

View Details    Make Paym

Ledger    Wallet    Auto-Payments

- Home
- Payments
- Messages & Alerts
- Announcements
- Lease Options ∨
- Contact Property
- My Apartment ∨
- FAQ
- Request Maintenance
- Resident Portal Feedback
- Settings ∨

Important Links

- Logout
- ← Collapse

Full Ledger

| Date | Type | Source | Charges | Payments | Bal... |
|------|------|--------|---------|----------|--------|
|  | Charge - Lease Violation Fees | Property | $200.00 | | $2,396 |
|  | Charge - Utility Charges - Electricity - Common Area Electric From 08/01/2022 to 08/31/2022 | Property | $14.45 | | $2,196 |
|  | Charge - Utility Charges - Water - Sewer From 08/01/2022 to 08/31/2022 | Property | $45.18 | | $2,182.1 |
|  | Charge - Utility Charges - Water - Water From 08/01/2022 to 08/31/2022 | Property | $37.81 | | $2,136 |
|  | Charge - Monthly Cable Television Charges - Posted from 11/01/2022 to 11/30/2022 | Property | $39.99 | | $2,098 |
|  | Charge - Monthly Property Unit Protection Fee - Posted from 11/01/2022 to 11/30/2022 | Property | $14.00 | | $2,058.1 |
|  | Charge - Monthly Package Concierge Fee - Posted from 11/01/2022 to 11/30/2022 | Property | $5.00 | | $2,044 |
|  | Charge - Rent | Property | $2,016.00 | | $2,039 |
|  | Charge - Monthly Utility Service Fee - Posted from 11/01/2022 to 11/30/2022 | Property | $9.99 | | $23 |
|  | Charge - Monthly Trash Reimbursement - Posted from 11/01/2022 to 11/30/2022 | Property | $10.00 | | $15 |
|  | Charge - Monthly Pest Control Fee - Posted from 11/01/2022 to 11/30/2022 | Property | $5.00 | | $5. |

Exhibit H

# AFFIDAVIT OF FACTS

| | | |
|---|---|---|
| **MIYANNA STAFFORD** | } | |
| **2100 SHILOH VALLEY DR #8012** | } | |
| **KENNESAW, GA [30144]** | } | Date: November 6, 2022 |
| | } | |
| **Birchstone Residential-Halston Shiloh Valley** | } | |
| **ATTN: DAVID DEITZ, PRESIDENT** | } | |
| **3501 OLYMPUS BLVD, SUITE 360** | } | |
| **COPPELL, TX [75019]** | } | |

I, Miyanna Stafford, hereafter referred to as the "Affiant" having firsthand knowledge of the facts stated herein, and being competent in mind and body to testify, and holder in due course.

## Facts herein

Notice to All, I am preserving the right to dispute alleged lease violation on 11/1/2022, and excessive fee pertaining to said lease violation, and challenge Halston Shiloh Valley Management's notion of my residential conduct and breach of Lease Contract is in fact false, now present:

1. Fact, Affiant has a current Lease Contract with Atlantic Pacific Property Management LLC; signed and executed on 5/13/2022 prior to the acquisition of new owners and Birchstone Residential-Halston Shiloh Valley as the managing agent. Per the lease terms, Affiant agreed to the monthly trash reimbursement fee, and proper garbage disposal as stipulated in section 14. **Resident's Use of the Apartment and Conduct,** by depositing trash directly in the compactor. Affiant's current lease does not stipulate additional fees related to trash disposal such as trash violation fines and/or valet trash service fee.

2. Fact, Affiant did not agree or give consent by signature to accept any new fees or offers from Halston- Shiloh Valley Management prior to, upon, or thereafter the lease contract with Atlantic Pacific Property Management going into effect. The rules, terms, and fees in original Lease contract are enforceable and over stand any imposed new rule and/or fee from the now existing managing agent and any course of action taken against Affiant thereafter is **EX POST FACTO** under the Constitution, stating "No bill of attainder, ex post facto law, retroactive law, or laws impairing the obligation of contract or making irrevocable grant of special privileges or immunities shall be passed" (Georgia Constitution, Para X, *Bill of attainder; ex post facto laws; and retroactive laws*); therefore, criminalizing conduct that was legal when originally performed.

3. Fact, Affiant is aware that Birchstone Residential-Halston Shiloh Valley Management's corporation charter falls under the US Constitution, as the Constitution states "The General Assembly shall not remit the forfeiture of the charter of any corporation, now existing, nor alter

or amend the same, nor pass any other general or special law for the benefit of said corporation, except upon the condition that such corporation shall thereafter hold its charter subject to the provisions of this Constitution...." (Georgia Constitution, Article IV. Section II, Par. III).

4. Fact, Affiant's work schedule conflicts with the valet trash schedule specific to setting trash bin in breezeway and trash bin retrieval timeframes as enforced by Halston-Shiloh Valley Management. The 14th Amendment of the U.S. Constitution prohibits the States from depriving a person's Civil Rights as it is an act of discrimination to assume that all residents of the community have the same work schedule and have the same ability to adhere to a set schedule for waste management with no regard to unforeseen events, circumstances, or incapacitation.

5. Fact, Affiant was accused of having multiple violations of leaving trash container in the breezeway throughout the day. Affiant was never notified by proper letter or electronic mail from Halston-Shiloh Valley Management of other specified violation date(s) prior to 11/1/2022. According to the **Sixth Amendment of the Constitution** guarantees the right to face your accuser, states "....to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him...." (US Constitution), therefore, Affiant was not given the opportunity to have knowledge of other violations if any existed before said violation fee was imposed. Furthermore, according to the Lease Contract section (22) **Notices**, state "All notices must be hand-written, dated, and signed. The notice must be given personally or by certified mail, return receipt requested. Notice shall be sent to Resident at the apartment and to Management at the community business office". Affiant has proof in the attachment labeled as Exhibit A.

6. Fact, Affiant has proof that Halston Shiloh Valley Management instructs its tenants to leave trash in the breezeway for disposal which serves as a direct violation of the Lease. According to the lease section 14. **Resident's Use of the Apartment and Conduct**, stating ".... Resident shall not leave or dispose of trash, garbage, or other materials in hallways, breezeways, patios, balconies, or common areas of any portion of the apartment building or community. Resident shall promptly take trash, garbage, or refuse to the proper dumpster, compactor, or trash collection area and properly dispose of organic and inorganic material as provided by law and as provided by the community rules." Affiant also bears witness to instances of trash not being picked up by the valet trash service contractor.

7. Fact, Affiant has proof in the attachment labeled as Exhibit A that Halston Shiloh Valley Management has defamed Affiant's reputation with false accusation of resident conduct within the contents of the violation notice dated 11/1/2022 with copy sent to Residents File.

Now Affiant is formally and timely declaring the dispute between Affiant and Halston Shiloh Valley Management be resolved immediately by removal of the violation fee and violation notice in Affiant's resident file. Affiant has ceased using the valet trash service for the duration of the lease contract.

Furthermore, Affiant has received injuries; including but not limited to, mental and physical stress, fraud, defamation of character, and discrimination.

Further Affiant sayeth not.

I declare and affirm that the facts stated herein are true, correct, and complete in all material fact, not misrepresented and made under the penalties of perjury of the laws of The United States of America and the State of Georgia.

Without Prejudice UCC 1-308

_Miyanna Stafford_ _____ Seal

Stafford, Miyanna

ALL RIGHTS RESERVED

Holder in due course, Settlor, Creator, Executor, and Sole Beneficiary

Authorized Representative for MIYANNA STAFFORD

Georgia State )

) **ACKOWLEDGEMENT**

Cobb County )

I, _S. Philips_ , a Notary Public for _Cobb_ County and _Georgia_ State, do hereby certify that _Miyanna Stafford_ , did personally appear before me and executed the foregoing.

Witness my hand and seal this _9th_ day of _November_, 2022.

_Philips_

Notary Public
My Commission Expires _July 26th 2024_

S PHILIPS
MY COMMISSION EXPIRES
NOTARY
PUBLIC
COBB COUNTY, GEORGIA
JULY 26, 2024

# USPS Tracking®

FAQs >

**Tracking Number:**

**Remove ✕**

## 9581712263632313642954

Copy      **Add to Informed Delivery**
**(https://informeddelivery.usps.com/)**

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 3:36 pm on November 10, 2022 in COPPELL, TX 75019. The item was signed for by D DEITZ.

**Get More Out of USPS Tracking:**

     **USPS Tracking Plus®**

● **Delivered**
**Delivered, Front Desk/Reception/Mail Room**

COPPELL, TX 75019
November 10, 2022, 3:36 pm

● **Out for Delivery**

COPPELL, TX 75019
November 10, 2022, 10:37 am

● **Arrived at Post Office**

COPPELL, TX 75019
November 10, 2022, 10:26 am

● **Arrived at USPS Regional Destination Facility**

COPPELL TX DISTRIBUTION CENTER
November 10, 2022, 7:57 am

● **Departed USPS Regional Origin Facility**

ATLANTA-PEACHTREE GA DISTRIBUTION CENTER

Feedback

November 9, 2022, 9:49 pm

**Arrived at USPS Regional Origin Facility**

ATLANTA-PEACHTREE GA DISTRIBUTION CENTER

November 9, 2022, 9:49 pm

**USPS in possession of item**

KENNESAW, GA 30144
November 9, 2022, 12:25 pm

**Hide Tracking History**

---

**Text & Email Updates** ⌄

---

**Proof of Delivery** ⌄

---

**USPS Tracking Plus®** ⌄

---

**Product Information** ⌄

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

**FAQs**

exhibit I

# Halston Shiloh Valley's Annoucements!

## Resident Portal

Available to ALL residents. Be sure to create an account if you haven't! You can pay rent online, submit a worker order, request for pest control, receive important emails and announcements. Don't miss out! Visit www.residentportal.com and create your account today!





## MEET YOUR NEW STAFF!

Community Manager: Wakeelah Moore
Assistant Community Manager: Britney Lindsey
Leasing Specialist: Jessica Cano

Maintenace Supervisor: Oscar Cruz
Maintenace Assistant Supervisor: Jake Brumley
Maintenace technician: Willie Landrum

OFFICE HOURS:
Monday- Friday: 8:30am - 5:30pm
Saturday: 10am-5pm
Sunday: Closed

## Friendly Reminders!

A1 Valet Trash has begun. Please remember to have your valet trash bin out by 8pm and inside your apartment by 9am the following day. Small grocery bags, oversized items or loose debris will not be picked up. Please place trash in 13 gallon trash bags. Failure to comply results in a $200 violation fee.



## Upcoming Changes!!

Starting November 1, 2022, evictions will be filed the 10th of every month no exceptions, and the legal fee will now be $500.

## Resident Referrals!

IT PAYS TO HAVE FRIENDS!!
Refer a friend who moveS in and you get $500!



 

Christina Andrews <c▓▓▓▓▓▓▓▓@gmail.com>

---

**1st Notice**
1 message

---

**leasing@halstonshilohvalley.com** <leasing@halstonshilohvalley.com>       Mon, Dec 5, 2022 at 11:45 AM
Reply-To: leasing@halstonshilohvalley.com
To: c▓▓▓▓▓▓▓▓@gmail.com



## 1st Past Due  Reminder

## Christina Andrews, Skye N▓▓▓ T▓▓▓▓, Juliyana O▓▓▓▓▓ and Miyanna Stafford ,

This notice is a friendly reminder that your rent is due and payable on the 1st day of each month, and late if paid after the 3 **rd** day of the month. To date, we have not received your full monthly rent payment.

**Currently, you have an amount due of** $ 550.00 . **Please  login to your online portal to make your payment here -**  https://halstonshilohvalley.residentportal.com/

**Thank you for being a valued resident.**

**Sincerely,**
*Halston Shiloh Valley*

_Exhibit K_

## Balance Details

| | |
|---|---:|
| Rent | $2,016.00 |
| Monthly Package Concierge Fee - Posted from 12/01/2022 to 12/31/2022 | $5.00 |
| Monthly Cable Television Charges - Posted from 12/01/2022 to 12/31/2022 | $39.99 |
| Monthly Trash Reimbursement - Posted from 12/01/2022 to 12/31/2022 | $10.00 |
| Monthly Property Unit Protection Fee - Posted from 12/01/2022 to 12/31/2022 | $14.00 |
| Monthly Pest Control Fee - Posted from 12/01/2022 to 12/31/2022 | $5.00 |
| Monthly Utility Service Fee - Posted from 12/01/2022 to 12/31/2022 | $8.99 |
| Utility Charges - Water - Water From 09/01/2022 To 09/30/2022 | $35.51 |
| Utility Charges - Water - Sewer From 09/01/2022 To 09/30/2022 | $42.36 |
| Utility Charges - Electricity - Common Area Electric From 09/01/2022 To 09/30/2022 | $11.81 |
| Late Charges | $175.00 |
| Lease Violation Fees | $114.93 |
| Utility Charges - Water - Sewer From 08/01/2022 To 08/31/2022 | $45.08 |

Close

## Balance Details

| | |
|---|---|
| Monthly Cable Television Charges – Posted from 12/01/2022 to 12/31/2022 | $39.99 |
| Monthly Trash Reimbursement – Posted from 12/01/2022 to 12/31/2022 | $10.00 |
| Monthly Property Unit Protection Fee – Posted from 12/01/2022 to 12/31/2022 | $14.00 |
| Monthly Pest Control Fee – Posted from 12/01/2022 to 12/31/2022 | $5.00 |
| Monthly Utility Service Fee – Posted from 12/01/2022 to 12/31/2022 | $8.99 |
| Utility Charges – Water – Water From 09/01/2022 To 09/30/2022 | $35.51 |
| Utility Charges – Water – Sewer From 09/01/2022 To 09/30/2022 | $42.36 |
| Utility Charges – Electricity – Common Area Electric From 09/01/2022 To 09/30/2022 | $11.81 |
| Late Charges | $175.00 |
| Lease Violation Fees | $114.93 |
| Utility Charges – Water – Sewer From 08/01/2022 To 08/31/2022 | $45.08 |
| Monthly Cable Television Charges – Posted from 11/01/2022 to 11/30/2022 | $39.99 |
| Total | $2,563.66 |

Close

*Exhibit L*

CLAIMANTS:
Miyanna Stafford
Christina Andrews
1635 OLD US 41 HWY NW, UNIT 112
KENNESAW, GEORGIA [30152]

DEFENDANT:                                REGISTERING AGENT:
BIRCHSTONE RESIDENTAL INC                 CAPITOL CORPORATE SERVICES INC
HALSTON SHILOH VALLEY                     FRANK ROESSLER, PRESIDENT
ATTN: DAVID DEITZ, PRESIDENT              515 E. PARK AVE, 2ND FLOOR
3501 OLYMPUS BLVD, SUITE 360              TALLAHASSEE, FL [32301]
COPPELL, TEXAS [75019]

### NOTICE TO AGENT IS NOTICE OF PRINCIPAL

### NOTICE OF PRINCIPAL IS NOTICE TO AGENT

Date: December 9, 2022

RE: AFFIDAVIT OF FACTS DATED NOVEMBER 6, 2022

## NOTICE OF DEFAULT, THREE DAY OPPORTUNITY TO CURE, AND CEASE AND DESIST

This is notice of default for non-response and dishonor of the presentment of AFFIDAVIT
OF FACTS for dispute and exhibit attachments sent on 11/09/22 via Express Mail
tracking 9581 7122 6363 2313 6429 54 and received and signed by D. Deitz on
11/10/22. Defendant has been in possession of Affidavit and exhibits as specified in
affidavit for thirty (30) days without rebuttal. Defendant gave no notice of dishonor.
silence is acquiescence; acquiescence is estoppel. Claimant(s) hereby assert the facts in
the AFFIDAVIT and demand that:

1. Defendant's organization uphold honest accounting practices by ensuring proper
   allocation of plaintiffs' rental payments to rental-based obligations such as utilities,
   rent, waste management, etc. and cease from unfair practices by applying rental
   payments to disputed item(s) as listed in the Affidavit. Claimants are demanding to
   receive a "true and correct" statement of accounting for ALL monthly rent charges

for November 2022 and December 2022 line-by-line to include alleged rent violation fee(s) and late fee(s).

2. Provide details of the total account and general ledger statement showing the full and complete Accounting of the alleged obligation under (UCC 9-210) you are attempting to collect from me, signed and sworn to by the authorized person responsible for maintaining these records and having first-hand knowledge as to their accuracy and authenticity, and are able and willing to testify to same under oath to that effect.

3. Absent a rebuttal to AFFIDAVIT OF FACTS or cure of breach, no later than the time-frame given in this notice, your organization must cease and desist from contacting Claimant(s) through email, telephone, and in person at Claimant(s) home or work, and also through any third parties, including but not limited to friends, family members, employers, or banks associated with Claimant(s), directly or indirectly, in connection to collection of the disputed fees.

4. Your organization is barred from further collection activity of disputed fees, eviction attempts, and consumer reporting of any kind, including but not limited to Claimant(s) Resident file and Credit or Consumer Reporting Agencies, public or private.

5. Defendant must prove they are "holder in due course" of the original lease contract

6. Defendant must furnish its organization's oath of ethics documentation

Claimants are seeking remedy for multiple injuries caused by your organization which include but are not limited to:

    a. Coercion of breaching Rental Agreement

    b. Mental Anguish

    c. Extortion (including of minors)

    d. Fraud

    e. Breach of minor's privacy

    f. Addressing minor's in regard to a bill

    g. Defamation of character

    h. Harassment

    i.    Deprivation of constitutional rights

    j.    Discrimination

Claimants are now re-presenting a copy of original Affidavit of Facts and additional exhibits. Failure to rebut this claim within (7) days after postmarked delivery will be evidence that all parties stipulate to the facts herein as true, correct, and complete, therefore; Defendant is given three (3) days to cure and if not cured within such time, a final default will be entered by the clerk of the court according to the rules of court.

# __List of Exhibits__

See Exhibits attached as listed below:

### __Exhibit Name__                     __Description__

| Exhibit Name | Description |
| --- | --- |
| Exhibit A | Rental Contract- Dated 5/13/2022 (5 pages) |
| Exhibit B | Letter to Regional Manager- Dated 11/3/2022 |
| Exhibit C | Electronic Trash Violation Notice- Dated 11/1/2022 (2 pages) |
| Exhibit D | Email- **Valet Trash Bin Reminder**- Dated 10/5/2022 (2 pages) |
| Exhibit E | Email- **Valet Trash Collection Guide**- Dated 9/30/2022 (3 pages) |
| Exhibit F | Email- **Valet Trash Service Announcement**- Dated 9/29/2022 (2 pages) |
| Exhibit G | Halston Shiloh Valley Rental statement Dated 10/27/2022 with attached Screenshot of Rental Accounting ledger showing violation fee (2 pages) |
| Exhibit H | Affidavit UPS Tracking- Tracking Number: 9581712263632313642954 (2 pages) |
| Exhibit I | Email- **1st Notice /1st Past Due Reminder**- Dated 12/5/2022 |
| Exhibit J | Halston Shiloh Valley Rental statement- Dated 11/25/2022 |
| Exhibit K | Screenshot of Rental Portal/Rental Accounting ledger- November 2022 |
| Exhibit L | Balance Details (Rental Charges for December 2022) – (2 pages) |
| Exhibit M | Email- **Halston Shiloh Valley Rental Payment Confirmation** (2 pages)- Payment date 12/3/2022 |

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this __10__ day of __December__, 2022.

All rights reserved without Prejudice UCC 1-308

_Christina: Andrews_
Christina: Andrews

_Miyanna: Stafford_
Miyanna: Stafford

_Dominique Jordan_
(Signature, Witness No.1)

_Ima Dusan_
(Signature, Witness No.2)

Georgia State  )
                    )    **ACKOWLEDGEMENT**
Cobb County  )

I, __S Philips__, a Notary Public for __Cobb__ County and

__Georgia__ State, do hereby certify

that __Christina Andrews, Miyanna Stafford__ did

personally appear before me and executed the foregoing.

Witness my hand and seal this __10th__ day of __December__ 2022.

_Philips_
Notary Public
My Commission Expires __July 26th 2024__

S PHILIPS
MY COMMISSION EXPIRES
NOTARY
(Seal) PUBLIC
JULY 26, 2024
COBB COUNTY, GEORGIA

NOTICE OF DEFAULT AND THREE DAY OPPORTUNITY TO CURE, AND CEASE AND DESIST

# USPS Tracking®

Remove ✕

Tracking Number:

## 70221670000121770401

Copy      Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 3:55 pm on January 3, 2023 in NEW YORK, NY 10017.

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

Delivered
Delivered, Front Desk/Reception/Mail Room
NEW YORK, NY 10017
January 3, 2023, 3:55 pm

**See All Tracking History**

---

**Text & Email Updates**

---

**USPS Tracking Plus®**

---

**Product Information**

U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)          $ _____
☐ Return Receipt (electronic)        $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required           $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

Postage
$

Total Postage and Fees
$ Birchstone Residential

Sent To
Attn: Frank Roessler
Street and Apt. No., or PO Box No.
461 5th Ave, Flr 16
City, State, ZIP+4
New York, NY 10017

PS Form 3800, April 2015 PSN 7530-02-000-9047      See Reverse for Instructions

(vertical) 7021 1670 0000 1217 7022 0401

**See Less ∧**

Track Another Package

Enter tracking or barcode numbers

# USPS Tracking®

Tracking Number:                                                          Remove ✕

## 70221670000121749865

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was returned to the sender on December 13, 2022 at 2:16 pm in COPPELL, TX 75019 because the addressee was not known at the delivery address noted on the package.

**Get More Out of USPS Tracking:**

   **USPS Tracking Plus®**

Alert
⬤ Addressee Unknown
COPPELL, TX 75019
December 13, 2022, 2:16 pm

⬤ Delivered, Individual Picked Up at Postal Facility
COPPELL, TX 75019
December 12, 2022, 11:21 am

⬤ **See All Tracking History**

**Text & Email Updates**

**USPS Tracking Plus®**

**Product Information**



U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

Coppell TX 75019

| | |
|---|---|
| Certified Mail Fee | $4.00 |
| Extra Services & Fees (check box, add fee as appropriate) | $3.75 |
| ☐ Return Receipt (hardcopy) | $0.00 |
| ☐ Return Receipt (electronic) | $0.00 |
| ☑ Certified Mail Restricted Delivery | $0.00 |
| ☑ Adult Signature Required | $0.00 |
| ☐ Adult Signature Restricted Delivery | |
| Postage | $10.85 |
| Total Postage and Fees | |

12/10/2022

Sent To  Birchstone · Residential Inc
Street and Apt. No., or PO Box No.  Traston Shiloh Valley, David Deitz
3501 Olympus Blvd Suite 360
City, State, ZIP+4®  Coppell TX 75019

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions

See Less ∧

**Halston Shiloh Valley**

Exhibit M

PO Box 35, Lehi, UT 84043-0035

Kennesaw GA 30144

amount enclosed

**Christina Andrews**
2100 Shiloh Valley Dr Nw #8012
Kennesaw GA 30144

For credit / debit card and eCheck payments go to
*halstonshilohvalley.residentportal.com*

    

▲ PLEASE DETACH HERE AND RETURN TOP PORTION WITH YOUR PAYMENT ▲

Invoice Number : 013810171    Invoice Date : 11/25/2022    Amount Due : $2563.66    Due Date : 12/01/2022

## UTILITY SERVICE CHARGES

| utility | provider | calc | start date | end date | meter start | meter end | total usage | cost per unit | total |
|---|---|---|---|---|---|---|---|---|---|
| Common Area Electric | Cobb EMC | RUB | 09/01/2022 | 09/30/2022 | -- | -- | -- | -- | $11.81 |
| Sewer | Cobb County Water System | RUB | 09/01/2022 | 09/30/2022 | -- | -- | -- | -- | $42.36 |
| Water | Cobb County Water System | RUB | 09/01/2022 | 09/30/2022 | -- | -- | -- | -- | $35.51 |
| | | | | | | | | | $89.68 |

## LEASE CHARGES

| description | date | total |
|---|---|---|
| Rent | 12/01/2022 | $2,016.00 |
| Cable Television Charges | 12/01/2022 | $39.99 |
| Utility Service Fee | 12/01/2022 | $8.99 |
| Trash Reimbursement | 12/01/2022 | $10.00 |
| Package Concierge Fee | 12/01/2022 | $5.00 |
| Pest Control Fee | 12/01/2022 | $5.00 |
| Property Unit Protection Fee | 12/01/2022 | $14.00 |
| | | $2,098.98 |

| | |
|---|---|
| Subtotal | $2,188.66 |
| Balance forward as of 11/25/2022 | $375.00 |
| AMOUNT DUE | $2,563.66 |



# ResidentPortal

Pay rent with a single tap.
Don't let paying rent slow you down.

Download on the
App Store

**Resident**Utility™    Entrata is a third-party billing provider for your community and, like your community, is not your utility provider. Entrata calculates the individual service charges. If you have questions regarding the items in 'Lease Charges', please contact your leasing office. For other questions, please contact (877) 825-3995 Monday through Friday 9AM-5PM, Mountain Time.



## Payment Receipt

halstonshilohvalley.residentportal.com

**AUTHORIZATION CODE**
1589605844

**PAYMENT TYPE**
E-Money Order

**Halston Shiloh Valley**
Christina Andrews
Unit: - 8012
2100 Shiloh Valley Dr NW #8012
KENNESAW
GA 30144

**PAYMENT NUMBER**
1544297648

**PAYMENT DATE**
Dec 03, 2022 02:18 PM EST

**PURCHASE SUMMARY**

| Payment Amount | $2,188.66 |
|---|---|

Memo:MoneyGram Payment for TID: 67153164

Shown on Statement as: Halston Shiloh Valley 3469 FR OP
This payment was processed by Entrata, Inc. on behalf of Halston Shiloh Valley.

**CHARGES PAID**

| Date | Nov 10, 2022 |
|---|---|
| Description | Late Charges |
| Amount | $175.00 |
| Amount Paid | $175.00 |

| Date | Nov 01, 2022 |
|---|---|
| Description | Utility Charges - Water |
| Amount | $45.18 |
| Amount Paid | $45.08 |

Date                                        Nov 01, 2022
Description                          Lease Violation Fees
Amount                                         $200.00
Amount Paid                                    $114.93

-----------------------------------------------------------------------

Date                                        Nov 01, 2022
Description                    Cable Television Charges
Amount                                          $39.99
Amount Paid                                     $39.99

-----------------------------------------------------------------------

Date                                        Dec 01, 2022
Description                                         Rent
Amount                                       $2,016.00
Amount Paid                                  $1,813.66

-----------------------------------------------------------------------

**Total**                                   **$2,188.66**


Click here to login Resident Portal
Contact Halston Shiloh Valley at (770) 590-8673 for refund policy.
**Please retain for your records.**

  





Pay your rent today with **MoneyGram!**  



**Find a MoneyGram location** near you:
Call 1-800-926-9400 or visit www.moneygram.com/locations

**Here are the 3 nearest locations for your convenience:**

 **Nationwide Credit**
2015 Vaughn Rd Nw
Kennesaw, GA
(770) 956-5845

**1.0 miles away**

 **Cvs - #6106**
100 Piedmont Rd
Marietta, GA
(770) 795-9844

**1.2 miles away**

 **Circle K - #2708..**
1760 Bells Ferry Rd
Marietta, GA
(770) 428-5570

**1.2 miles away**

**Bring the following** information to the
MoneyGram Location with you:

| Company Name | Resident Pay |
| --- | --- |
| Receive Code | 9817 |
| Account Number | 08929300 |
| First Name in System | Christina |
| Last Name In System | Andrews |

**Pay Your Rent!**
Fill out the blue form or pick up the MoneyGram phone. Then pay the bill and the fee at the counter in cash. You will receive proof of payment[1].

 Pay in cash at nearly 35,000 U.S. MoneyGram agent locations - located inside many of your favorite retailers[1]

 Your Property Manager is notified of your payment same-day[2]

1. At Walmart, find MoneyGram at the Customer Service Counter or in the Money Center. At all other agents, ask at the customer service counter for the MoneyGram in-store location.

2. Payment notification may be available in real time or within 10 minutes. Service level subject to cutoff times, is in business days and does not include weekends or holidays. Actual payment posting time handled by .

3. Due to federal regulations, unattended terminals and self service kiosks may have limits as low as $800 per transaction.

Licensed as a Money Transmitter by the Banking Department of the State of New York. MoneyGram and the Globe are marks of MoneyGram. All other marks are the property of their respective owners. © 2013 MoneyGram All Rights Reserved.

4. One-time payment maximum limits can vary between MoneyGram locations. If your charges exceed the one-time payment maximum limit, you will be charged another convenience fee for each additional payment.

CLAIMANTS:
Miyanna Stafford
Christina Andrews
1635 OLD US 41 HWY NW, UNIT 112
KENNESAW, GEORGIA [30152]

DEFENDANT:
BIRCHSTONE RESIDENTAL INC
ATTN: DAVID DEITZ, PRESIDENT
3501 OLYMPUS BLVD, SUITE 360
COPPELL, TEXAS [75019]

**NOTICE TO AGENT IS NOTICE OF PRINCIPAL**

**NOTICE OF PRINCIPAL IS NOTICE TO AGENT**

Date: December 9, 2022

RE: AFFIDAVIT OF FACTS DATED NOVEMBER 6, 2022

## FINAL NOTICE

## THREE DAY OPPORTUNITY TO CURE AND INTENT TO SUE

This is a final notice of non-response and dishonor of the presentment of AFFIDAVIT OF FACTS notice for dispute sent on 11/09/22 via Express Mail tracking 9581 7122 6363 2313 6429 54 and received and signed by D. Deitz on 11/10/22. Defendant has been in possession of Affidavit for more than thirty (30) days without rebuttal. Silence is acquiescence; acquiescence is estoppel. Claimant(s) hereby assert the facts in the AFFIDAVIT and demand that:

1. Defendant's organization uphold honest accounting practices by ensuring proper allocation of Claimants' rental payments to rental obligations such as utilities, rent, waste management, etc. and cease from unfair practices by applying rental payments to disputed item(s) as listed in the Affidavit. Also, Claimants demand that statements sent from Defendants organization be fully itemized and are consistent throughout all forms of correspondence including but not limited to email, electronic Residential portal, and paper statements sent through mail.

2. Absent a rebuttal to AFFIDAVIT OF FACTS or cure of breach, no later than the time-frame given in this notice, your organization must cease and desist from contacting Claimant(s) through email, telephone, and in person at Claimant(s) home or work, and also through any third parties, including but not limited to friends, family members, employers, or banks associated with Claimant(s), directly or indirectly, in connection to collection of the disputed fees.

3. Claimants demand for termination of Rental Lease agreement in its entirety effective immediately upon receiving this notice on the grounds of multiple injuries caused by defendants' property management company, Birchstone Resdiential. Claimants demand thirty (30) days to vacate the premises beginning January 1, 2023.

4. Your organization is barred from further collection activity of disputed fees, eviction attempts, and consumer reporting of any kind, including but not limited to Claimant(s) Resident file and Credit or Consumer Reporting Agencies, public or private.

5. Defendant must prove that they are holder in due course of the original lease contract by providing the original contract to Claimants.

6. Defendant must furnish its organization's Oath of Ethics documentation.

7. Claimants are demanding monetary remedy for multiple injuries caused by your organization which include but are not limited to:
   - Coercion of breaching Rental Agreement
   - Mental Anguish and distress
   - Extortion (including of minors) - Addressing minors in regard to collecting a bill
   - Fraud
   - Breach of minor's privacy
   - Defamation of character
   - Harassment
   - Deprivation of constitutional rights
   - Discrimination

Claimants are now re-presenting a copy of original Affidavit of Facts notice and additional exhibits. Failure to rebut this claim point by point within three (3) days of delivery of this final notice will be evidence that all parties agree to the facts herein as true, correct, and complete, therefore; Defendant is given three (3) days to cure and if not cured within such time, a claim will be entered by the clerk of the court according to the rules of court.

# List of Exhibits

See Exhibits attached as listed below:

## Exhibit Name                    ## Description

| Exhibit Name | Description |
|---|---|
| Exhibit A | Rental Contract- Dated 5/13/2022 (5 pages) |
| Exhibit B | Letter to Regional Manager- Dated 11/3/2022 |
| Exhibit C | Electronic Trash Violation Notice- Dated 11/1/2022 (2 pages) |
| Exhibit D | Email- **Valet Trash Bin Reminder**- Dated 10/5/2022 (2 pages) |
| Exhibit E | Email- **Valet Trash Collection Guide**- Dated 9/30/2022 (3 pages) |
| Exhibit F | Email- **Valet Trash Service Announcement**- Dated 9/29/2022 (2 pages) |
| Exhibit G | Halston Shiloh Valley Rental statement Dated 10/27/2022 with attached Screenshot of Rental Accounting ledger showing violation fee (2 pages) |
| Exhibit H | Affidavit UPS Tracking- Tracking Number: 9581712263632313642954 (2 pages) |
| Exhibit I | Email- 1st Notice /1st Past Due Reminder- Dated 12/5/2022 |
| Exhibit J | Halston Shiloh Valley Rental statement- Dated 11/25/2022 |
| Exhibit K | Screenshot of Rental Portal/Rental Accounting ledger- November 2022 |
| Exhibit L | Balance Details (Rental Charges for December 2022) – (2 pages) |
| Exhibit M | Email- **Halston Shiloh Valley Rental Payment Confirmation (2 pages)-** Payment date 12/3/2022 |

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this _24_ day of _December_, 2022.

All rights reserved without Prejudice UCC 1-308

_Christina: Andrews_

Christina: Andrews

_Miyanna: Stafford_

Miyanna: Stafford

Georgia State )

) **ACKOWLEDGEMENT**

Cobb County )

I, _Laura Moss_, a Notary Public for _Cobb_ County and

_Georgia_ State, do hereby certify

that _Myanna Stafford_, _Christina Andrews_ did

personally appear before me and executed the foregoing.

Witness my hand and seal this _24th_ day of _De_, 2022.

_Laura Moss_

Notary Public

My Commission Expires _10/3/2024_

(Seal)

Cc to:
REGISTERING AGENT:
CAPITOL CORPORATE SERVICES INC
ATTN: FRANK ROESSLER, PRESIDENT
515 E. PARK AVE, 2ND FLOOR
TALLAHASSEE, FL [32301]

FINAL NOTICE: THREE DAY OPPORTUNITY TO CURE AND INTENT TO SUE

Birchstone Residential/ Birchstone Residential, Inc./Ashcroft Management, Inc.
ATTN: VAN BUSKIRK, PC
5302 LA BRANCH STREET
HOUSTON, TX [77004]

BIRCHSTONE RESIDENTIAL, INC.
ATTN: FRANK ROESSLER
461 5TH AVE FL 16
NEW YORK, NY [10017]

# USPS Tracking®

Tracking Number:

**70221670000121770371**

Remove ✕

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 10:05 am on December 30, 2022 in TALLAHASSEE, FL 32301.

---

**Get More Out of USPS Tracking:**

    **USPS Tracking Plus®**

● **Delivered**
Delivered, Front Desk/Reception/Mail Room
TALLAHASSEE, FL 32301
December 30, 2022, 10:05 am

● In Transit to Next Facility
December 29, 2022

● Departed USPS Regional Facility
TALLAHASSEE FL DISTRIBUTION CENTER
December 28, 2022, 11:08 pm

● Arrived at USPS Regional Facility
TALLAHASSEE FL DISTRIBUTION CENTER
December 28, 2022, 1:53 pm

● Arrived at USPS Regional Facility
ATLANTA NORTH METRO DISTRIBUTION CENTER
December 27, 2022, 11:01 pm

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $
Postage
$
Total Postage and Fees
$

Sent To *Capitol Corporate Services Inc.*
*Frank Roessler, President*
Street and Apt. No., or PO Box No. *515 E Park Ave, 2nd FLR*
City, State, ZIP+4® *Tallahassee, FL 32301*

7022 1670 0001 2177 0371

PS Form 3800, April 2015 PSN 7530-02-000-9047        See Reverse for Instructions

**Halston Shiloh Valley**   Exhibit D

PO Box 35, Lehi, UT 84043-0035

**Mail Payment To**
2100 Shiloh Valley Dr Nw
Kennesaw GA 30144

**Service Address**
2100 Shiloh Valley Dr Nw #8012

Kennesaw GA 30144

| INVOICE # | 014051530 |
|---|---|
| INVOICE DATE | 12/27/2022 |
| DUE DATE | 01/01/2023 |
| **AMOUNT DUE** | **$2,745.28** |

amount enclosed

[          ] . [          ]

**Christina Andrews**
2100 Shiloh Valley Dr Nw #8012
Kennesaw GA 30144

For credit / debit card and eCheck payments go to
*halstonshilohvalley.residentportal.com*

    

▲ PLEASE DETACH HERE AND RETURN TOP PORTION WITH YOUR PAYMENT ▲

Invoice Number : 014051530      Invoice Date : 12/27/2022      Amount Due : $2745.28      Due Date : 01/01/2023

## UTILITY SERVICE CHARGES

| utility | provider | calc | start date | end date | meter start | meter end | total usage | cost per unit | total |
|---|---|---|---|---|---|---|---|---|---|
| Common Area Electric | Cobb EMC | RUB | 10/01/2022 | 10/31/2022 | -- | -- | -- | -- | $11.90 |
| Sewer | Cobb County Water System | RUB | 10/01/2022 | 10/31/2022 | -- | -- | -- | -- | $45.91 |
| Water | Cobb County Water System | RUB | 10/01/2022 | 10/31/2022 | -- | -- | -- | -- | $38.49 |

$96.30

## LEASE CHARGES

| description | date | total |
|---|---|---|
| Cable Television Charges | 01/01/2023 | $39.99 |
| Utility Service Fee | 01/01/2023 | $8.99 |
| Property Unit Protection Fee | 01/01/2023 | $14.00 |
| Pest Control Fee | 01/01/2023 | $5.00 |
| Package Concierge Fee | 01/01/2023 | $5.00 |
| Rent | 01/01/2023 | $2,016.00 |
| Trash Reimbursement | 01/01/2023 | $10.00 |

$2,098.98

| Subtotal | · $2,195.28 |
|---|---|
| Balance forward as of 12/27/2022 | $550.00 |
| **AMOUNT DUE** | **$2,745.28** |



**ResidentPortal**
Pay rent with a single tap.
Don't let paying rent slow you down.


Download on the
**App Store**

**Resident**Utility™
*powered by Entrata*

Entrata is a third-party billing provider for your community and, like your community, is not your utility provider. Entrata calculates the individual service charges. If you have questions regarding the items in 'Lease Charges', please contact your leasing office. For other questions, please contact (877) 825-3995 Monday through Friday 9AM-5PM, Mountain Time.

Exhibit P

January 16, 2023

Miyanna Stafford
1635 Old US 41 Hwy
Kennesaw, Georgia by [30152]

**NOTICE TO AGENT IS NOTICE OF PRINCIPAL**

**NOTICE OF PRINCIPAL IS NOTICE TO AGENT**

Christina Andrews
P.O. Box 1147
Kennesaw, Georgia by [30156]

To: Birchstone Residential Inc./Halston Shiloh Valley
    Attn: Rental Manager and Regional Manager
    2100 Shiloh Valley Dr NW
    Kennesaw, GA [30144]
    Certified Mail# 7022 1670 0001 2177 0234

## Vacate Notice and Return Possession

We, Miyanna Stafford and Christina Andrews have vacated the unit #8012 at 2100 Shiloh Valley Dr NW, Kennesaw, Georgia 30144 as of January 16, 2023 and return possession of the unit back over to your organization, Birchstone Residential Inc. Enclosed are two (2) unit keys, one (1) mailbox key, and two (2) access gate cards. We conducted a final walk through of unit #8012 on January 16, 2023 with photos and video footage for our records.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this _16_ day of _January_ 2023.

All rights reserved without Prejudice UCC 1-308

Christina: Andrews                    Miyanna: Stafford

Georgia State  )

**ACKOWLEDGEMENT**

Cobb County  )


I, Sarah Woodward a Notary Public for Cobb County and Georgia State, do hereby certify that Miyanne Stafford , Chrishna Andrews did personally appear before me and executed the foregoing and I have verified the contents enclosed, unit keys, mailbox key, and gate access cards.

Witness my hand and seal this 17th day of Jan , 2023.

Sarah Woodward

Notary Public
My Commission Expires Dec. 8, 2025

(Seal)

CC:
BIRCHSTONE RESIDENTAL INC
HALSTON SHILOH VALLEY
ATTN: DAVID DEITZ, PRESIDENT
3501 OLYMPUS BLVD, SUITE 360
COPPELL, TEXAS [75019]
Certified Mail# 7022 1670 0001 2177 0241

REGISTERING AGENT
CAPITOL CORPORATE SERVICES INC
FRANK ROESSLER, PRESIDENT
515 E. PARK AVE, 2ND FLOOR
TALLAHASSEE, FL [32301]
Certified Mail# 7022 1670 0001 2177 0258

Birchstone Residential/Birchstone Residential Inc./Ashcroft Management, Inc.
ATTN: VAN BUSKIRK, PC
5302 LA BRANCH STREET
HOUSTON, TX [77004]
Certified Mail# 7022 1670 0001 2177 0265

# USPS Tracking®

Remove ✕

Tracking Number:

## 70221670000121770258

Copy    Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 12:40 pm on January 20, 2023 in TALLAHASSEE, FL 32301.

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

● **Delivered**
Delivered, Front Desk/Reception/Mail Room
TALLAHASSEE, FL 32301
January 20, 2023, 12:40 pm

● Departed USPS Regional Destination Facility
TALLAHASSEE FL DISTRIBUTION CENTER
January 20, 2023, 2:19 am

● Arrived at USPS Regional Destination Facility
TALLAHASSEE FL DISTRIBUTION CENTER
January 19, 2023, 12:42 pm

● Arrived at USPS Regional Origin Facility
ATLANTA NORTH METRO DISTRIBUTION CENTER
January 18, 2023, 12:35 am

● USPS in possession of item
KENNESAW, GA 30144
January 17, 2023, 12:18 pm



# USPS Tracking®

Tracking Number:                                            Remove ✕

**70221670000121770234**

Copy         Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to an individual at the address at 12:46 pm on January 20, 2023 in KENNESAW, GA 30144.

---

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

● **Delivered**
Delivered, Left with Individual
KENNESAW, GA 30144
January 20, 2023, 12:46 pm

● In Transit to Next Facility
January 19, 2023

● Departed USPS Regional Facility
ATLANTA GA DISTRIBUTION CENTER
January 18, 2023, 2:28 pm

● Arrived at USPS Regional Facility
ATLANTA GA DISTRIBUTION CENTER
January 18, 2023, 7:02 am

● Arrived at USPS Regional Facility
ATLANTA NORTH METRO DISTRIBUTION CENTER
January 18, 2023, 12:36 am

● USPS in possession of item



# USPS Tracking®

Tracking Number:

Remove ✕

## 70221670000121770241

Copy    Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your package is moving within the USPS network and is on track to be delivered to its final destination. It is currently in transit to the next facility.

---

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

• Delivered

• Out for Delivery

• Preparing for Delivery

**Moving Through Network**
In Transit to Next Facility
January 28, 2023

Departed USPS Regional Facility
ATLANTA GA DISTRIBUTION CENTER
January 24, 2023, 7:09 pm

Arrived at USPS Regional Facility
ATLANTA GA DISTRIBUTION CENTER
January 24, 2023, 12:30 pm

Arrived at USPS Regional Facility
ATLANTA NORTH METRO DISTRIBUTION CENTER
January 24, 2023, 12:33 am

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)  $_____
☐ Return Receipt (electronic)  $_____    Postmark
☐ Certified Mail Restricted Delivery  $_____    Here
☐ Adult Signature Required  $_____
☐ Adult Signature Restricted Delivery $_____

Postage
$

Total Postage and Fees
$

Sent To
Birchstone Residential / David Deitz
Street and Apt. No., or PO Box No.
3501 Olympus Blvd, Suite 360
City, State, ZIP+4®
Coppell TX 75019

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

# USPS Tracking®

Tracking Number:                                                                            Remove ✕

**70221670000121770265**

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 10:50 am on January 23, 2023 in HOUSTON, TX 77004.

---

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

● **Delivered**
Delivered, Front Desk/Reception/Mail Room
HOUSTON, TX 77004
January 23, 2023, 10:50 am

● In Transit to Next Facility
January 22, 2023

● Arrived at USPS Regional Destination Facility
NORTH HOUSTON TX DISTRIBUTION CENTER
January 21, 2023, 1:39 pm

● Arrived at USPS Regional Origin Facility
ATLANTA NORTH METRO DISTRIBUTION CENTER
January 18, 2023, 12:35 am

● USPS in possession of item
KENNESAW, GA 30144
January 17, 2023, 12:17 pm



  **Gmail**

---

## Payment reminder for Juliyana at Halston Shiloh Valley

1 message

---

**Birchstone Central Billing** <help@birchstone.centralbillingmgr.com>  Sat, Jan 28, 2023 at 1:46 PM
Reply-To: upload+35451007-b43f621b63515071@m.centralbillingmgr.com
To: Juliyana Q█████ <c█████████@gmail.com>


**BIRCHSTONE**
— RESIDENTIAL —

**Halston Shiloh Valley Central Billing**
PO Box 936
Caldwell, ID 83606

Hello Juliyana!

This is a friendly reminder of your open balance with us at **Halston Shiloh Valley** in **2100 Shiloh Valley Dr NW #8012 #8012, KENNESAW, GA 30144**. We understand that oversights happen but would appreciate prompt payment of this amount. If we have already made arrangements, please disregard this email or click below to fulfill the arrangement.

If you have any questions regarding your charges, please feel free to contact us at **(855) 207-0749** or **help@centralbillingmgr.com** and we will be happy to answer them for you.

To see a summary of your charges and resolve your balance, just click below.

Pay Balance

**Account Balance:**
$8,998.62

**Apartment**:
2100 Shiloh Valley Dr NW #8012 #8012, KENNESAW, GA 30144

**Co-residents**:
Christina Andrews
Skye N█████ T█████
Miyanna Stafford

**Your Payment Link**:
https://app.centralbillingmgr.com/users/sign_up?de=b43f621b63515071

Thank you!

**View Account Online:**
Click here to view your account online.

---

If you have any questions, please call Halston Shiloh Valley Central Billing .

---

UNSUBSCRIBE EMAIL


## Payment reminder for Skye at Halston Shiloh Valley
1 message

**Birchstone Central Billing** <help@birchstone.centralbillingmgr.com>        Sat, Jan 28, 2023 at 1:46 PM
Reply-To: upload+35451007-fc7ecbb40f425ab4@m.centralbillingmgr.com
To: Skye N████ T████ <o████████@gmail.com>

    **Halston Shiloh Valley Central Billing**
PO Box 936
Caldwell, ID 83606

Hello Skye!

This is a friendly reminder of your open balance with us at **Halston Shiloh Valley** in **2100 Shiloh Valley Dr NW #8012 #8012, KENNESAW, GA 30144**. We understand that oversights happen but would appreciate prompt payment of this amount. If we have already made arrangements, please disregard this email or click below to fulfill the arrangement.

If you have any questions regarding your charges, please feel free to contact us at **(855) 207-0749** or **help@centralbillingmgr.com** and we will be happy to answer them for you.

To see a summary of your charges and resolve your balance, just click below.

Pay Balance

**Account Balance:**
$8,998.62

**Apartment**:
2100 Shiloh Valley Dr NW #8012 #8012, KENNESAW, GA 30144

**Co-residents**:
Christina Andrews
Juliyana O████████
Miyanna Stafford

**Your Payment Link**:
https://app.centralbillingmgr.com/users/sign_up?de=fc7ecbb40f425ab4

Thank you!

**View Account Online:**
Click here to view your account online.

If you have any questions, please call Halston Shiloh Valley Central Billing .

UNSUBSCRIBE EMAIL

*Exhibit R*



**Halston Shiloh Valley**
2100 Shiloh Valley Dr NW
Kennesaw, GA 30144

| Statement Date: | Jan 24, 2023 |
|---|---|
| **Outstanding Balance:** | **$8,998.62** |

**Christina Andrews**
PO BOX 1147
KENNESAW, GA 30156-8147

| | |
|---|---|
| **Lease:** | 15290561 |
| **Unit:** | 8012 |
| **Move In Date:** | 05/13/2022 |
| **Lease Start Date:** | 05/13/2022 |
| **Lease End Date:** | 05/12/2023 |
| **Notice Given Date:** | 01/17/2023 |
| **Move Out Date:** | 01/17/2023 |

## Lease Holders

| Name | Occupant Type |
|---|---|
| Christina Andrews | Primary |
| Skye N----- T----- | Roommate (Responsible) |
| Juliyana O------- | Roommate (Responsible) |
| Miyanna Stafford | Roommate (Responsible) |

## Outstanding Charges

| Date | Description | Notes | Amount | Taxes | Total Amount |
|---|---|---|---|---|---|
| 01/24/2023 | Early Termination Fee | skipped early term -1 mth rent | $2,016.00 | $0.00 | $2,016.00 |
| 01/24/2023 | Damage Charges | full paint 3 bedroom | $515.00 | $0.00 | $515.00 |
| 01/24/2023 | Damage Charges | carpets not cleaned in all 3 bedrooms | $85.00 | $0.00 | $85.00 |
| 01/24/2023 | Damage Charges | stove/oven, fridge, microwave filthy | $75.00 | $0.00 | $75.00 |
| 01/24/2023 | Damage Charges | 2 months rent, skipped w/o notice | $4,032.00 | $0.00 | $4,032.00 |
| 01/24/2023 | Charges For Cleaning Needed | 3 bed cleaning | $140.00 | $0.00 | $140.00 |
| 01/24/2023 | Utility | Water : From | $94.85 | $0.00 | $94.85 |

| Date | Description | Notes | Amount | Taxes | Total Amount |
|------|-------------|-------|--------|-------|--------------|
| 01/24/2023 | Charges - Water Utility Charges - Water | 11/01/2022 To 01/17/2023 Sewer : From 11/01/2022 To 01/17/2023 | $113.14 | $0.00 | $113.14 |
| 01/24/2023 | Utility Charges - Electricity | Common Area Electric : From 11/01/2022 To 01/17/2023 | $32.35 | $0.00 | $32.35 |
| 01/01/2023 | Package Concierge Fee | Posted from 01/01/2023 to 01/31/2023 | $5.00 | $0.00 | $5.00 |
| 01/01/2023 | Utility Charges - Electricity | Common Area Electric From 10/01/2022 To 10/31/2022 | $11.90 | $0.00 | $11.90 |
| 01/01/2023 | Rent | | $2,016.00 | $0.00 | $2,016.00 |
| 01/01/2023 | Pest Control Fee | Posted from 01/01/2023 to 01/31/2023 | $5.00 | $0.00 | $5.00 |
| 01/01/2023 | Utility Service Fee | Posted from 01/01/2023 to 01/31/2023 | $8.99 | $0.00 | $8.99 |
| 01/01/2023 | Cable Television Charges | Posted from 01/01/2023 to 01/31/2023 | $39.99 | $0.00 | $39.99 |
| 01/01/2023 | Trash Reimbursement | Posted from 01/01/2023 to 01/31/2023 | $10.00 | $0.00 | $10.00 |
| 01/01/2023 | Utility Charges - Water | Sewer From 10/01/2022 To 10/31/2022 | $45.91 | $0.00 | $45.91 |
| 01/01/2023 | Utility Charges - Water | Water From 10/01/2022 To 10/31/2022 | $38.49 | $0.00 | $38.49 |
| 01/01/2023 | Property Unit Protection Fee | Posted from 01/01/2023 to 01/31/2023 | $14.00 | $0.00 | $14.00 |

**Total Unpaid Charges:** **$9,298.62**

## Repayment Agreements

| ID | Start Date | End Date | Payments Due | Payment Amount | Due Now | Balance |
|----|-----------|----------|--------------|----------------|---------|---------|
| | | | | | | |

**Total Repayment Agreement Balance:** **$0.00**

Halston Shiloh Valley
2100 Shiloh Valley Dr NW | Kennesaw | GA | 30144

**Deposits**

| Date | Description | Amount |
| --- | --- | --- |
| 05/13/2022 | Security Deposit | $300.00 |

**Total Deposits Held:** $300.00

**Unapplied Payments / Credits**

| Date | Description | Notes | Amount | Taxes | Total Amount |
| --- | --- | --- | --- | --- | --- |

**Total Unapplied Payments / Credits:** $0.00

**Outstanding Balance:** $8,998.62

Your move out charges have been outlined above. Please remit payment immediately to Central Billing – the best number to reach them at is (855) 207-0749, which you can call to discuss payment options. If no contact is made, this account will be turned over to collections. Thank you for your prompt attention to this matter.

 **Gmail** *Exhibit S* **Christina Andrews <c▓▓▓▓@gmail.com>**

---

## Payment Confirmation for Christina Andrews for Halston Shiloh Valley
1 message

---

**no-reply@entrata.com** <no-reply@entrata.com>  
Reply-To: no-reply@entrata.com  
To: c▓▓▓▓@gmail.com

Wed, Aug 3, 2022 at 1:35 PM



Payment Receipt  
halstonshilohvalley.residentportal.com

**AUTHORIZATION CODE**  
1568500403

**PAYMENT TYPE**  
eCheck x0943

**PAYMENT NUMBER**  
1531709910

**PAYMENT DATE**  
Aug 03, 2022 01:34 PM EDT

**Halston Shiloh Valley**  
Christina Andrews  
Unit: - 8012  
2100 Shiloh Valley Dr NW #8012  
KENNESAW  
GA 30144

**PURCHASE SUMMARY**

Payment Amount                                                                    $2,098.98

Shown on Statement as: Halston Shiloh Valley 3469 FR OP  
This payment was processed by Entrata, Inc. on behalf of Halston Shiloh Valley.

**CHARGES PAID**

Date                                                                              Aug 01, 2022

| Description | Rent |
|---|---|
| Amount | $2,016.00 |
| Amount Paid | $2,016.00 |

| Date | Aug 01, 2022 |
|---|---|
| Description | Property Unit Protection Fee |
| Amount | $14.00 |
| Amount Paid | $14.00 |

| Date | Aug 01, 2022 |
|---|---|
| Description | Package Concierge Fee |
| Amount | $5.00 |
| Amount Paid | $5.00 |

| Date | Aug 01, 2022 |
|---|---|
| Description | Utility Charges - Trash |
| Amount | $10.00 |
| Amount Paid | $10.00 |

| Date | Aug 01, 2022 |
|---|---|
| Description | Pest Control Reimbursement |
| Amount | $5.00 |
| Amount Paid | $5.00 |

| Date | Aug 01, 2022 |
|---|---|
| Description | Utility Service Fee |
| Amount | $8.99 |
| Amount Paid | $8.99 |

| Date | Aug 01, 2022 |
|---|---|
| Description | Cable Television Charges |
| Amount | $39.99 |
| Amount Paid | $39.99 |

| **Total** | **$2,098.98** |
|---|---|

Click here to login Resident Portal

Contact Halston Shiloh Valley at (770) 590-8673 for refund policy.

**Please retain for your records.**





Is this email not displaying correctly?
View it in your browser

 Gmail                                    **Christina Andrews <c⬛⬛⬛⬛⬛@gmail.com>**

---

# Payment Confirmation for Christina Andrews for Halston Shiloh Valley
1 message

---

**no-reply@entrata.com** <no-reply@entrata.com>                    Sat, Sep 3, 2022 at 5:18 PM
Reply-To: no-reply@entrata.com
To: c⬛⬛⬛⬛⬛@gmail.com



Payment Receipt
halstonshilohvalley.residentportal.com

**AUTHORIZATION CODE**
1574353983

**PAYMENT TYPE**            **Halston Shiloh Valley**
eCheck x4371               Christina Andrews
                          Unit: - 8012
**PAYMENT NUMBER**          2100 Shiloh Valley Dr NW #8012
1535133304                KENNESAW
                          GA 30144
**PAYMENT DATE**
Sep 03, 2022 05:18 PM
EDT

**PURCHASE SUMMARY**

Payment Amount                                    $2,203.60

Shown on Statement as: Halston Shiloh Valley 3469 FR OP
This payment was processed by Entrata, Inc. on behalf of Halston Shiloh Valley.

**CHARGES PAID**

Date                                              Sep 01, 2022

| Description | Rent |
|---|---|
| Amount | $2,016.00 |
| Amount Paid | $2,016.00 |

---

| Date | Sep 01, 2022 |
|---|---|
| Description | Property Unit Protection Fee |
| Amount | $14.00 |
| Amount Paid | $14.00 |

---

| Date | Sep 01, 2022 |
|---|---|
| Description | Package Concierge Fee |
| Amount | $5.00 |
| Amount Paid | $5.00 |

---

| Date | Sep 01, 2022 |
|---|---|
| Description | Utility Charges - Water |
| Amount | $53.97 |
| Amount Paid | $53.97 |

---

| Date | Sep 01, 2022 |
|---|---|
| Description | Utility Charges - Electricity |
| Amount | $5.26 |
| Amount Paid | $5.26 |

---

| Date | Sep 01, 2022 |
|---|---|
| Description | Utility Charges - Trash |
| Amount | $10.00 |
| Amount Paid | $10.00 |

---

| Date | Sep 01, 2022 |
|---|---|
| Description | Pest Control Reimbursement |
| Amount | $5.00 |
| Amount Paid | $5.00 |

---

| Date | Sep 01, 2022 |
|---|---|
| Description | Utility Service Fee |
| Amount | $8.99 |
| Amount Paid | $8.99 |

---

| Date | Sep 01, 2022 |
|---|---|
| Description | Cable Television Charges |
| Amount | $39.99 |
| Amount Paid | $39.99 |

---

| Date | Sep 01, 2022 |
|---|---|
| Description | Utility Charges - Water |
| Amount | $45.39 |
| Amount Paid | $45.39 |

---

| **Total** | **$2,203.60** |
|---|---|

Click here to login Resident Portal

Contact Halston Shiloh Valley at (770) 590-8673 for refund policy.

**Please retain for your records.**

  

Is this email not displaying correctly?
View it in your browser

 Gmail                                    **Christina Andrews <c███████@gmail.com>**

---

## Payment Confirmation for Christina Andrews for Halston Shiloh Valley
1 message

---

**no-reply@entrata.com** <no-reply@entrata.com>                    Mon, Oct 3, 2022 at 3:47 PM
Reply-To: no-reply@entrata.com
To: c█████@gmail.com



Payment Receipt
halstonshilohvalley.residentportal.com

**AUTHORIZATION CODE**
1578584645

**PAYMENT TYPE**                    **Halston Shiloh Valley**
eCheck x4371                        Christina Andrews
                                    Unit: - 8012
**PAYMENT NUMBER**                  2100 Shiloh Valley Dr NW #8012
1538106937                          KENNESAW
                                    GA 30144
**PAYMENT DATE**
Oct 03, 2022 03:46 PM
EDT

**PURCHASE SUMMARY**

Payment Amount                                          $2,203.25

Shown on Statement as: Halston Shiloh Valley 3469 FR OP
This payment was processed by Entrata, Inc. on behalf of Halston Shiloh Valley.

**CHARGES PAID**

Date                                                    Oct 01, 2022

| Description | Rent |
|---|---|
| Amount | $2,016.00 |
| Amount Paid | $2,016.00 |

----------------------------------------------------------------

| Date | Oct 01, 2022 |
|---|---|
| Description | Property Unit Protection Fee |
| Amount | $14.00 |
| Amount Paid | $14.00 |

----------------------------------------------------------------

| Date | Oct 01, 2022 |
|---|---|
| Description | Package Concierge Fee |
| Amount | $5.00 |
| Amount Paid | $5.00 |

----------------------------------------------------------------

| Date | Oct 01, 2022 |
|---|---|
| Description | Utility Charges - Water |
| Amount | $38.54 |
| Amount Paid | $38.54 |

----------------------------------------------------------------

| Date | Oct 01, 2022 |
|---|---|
| Description | Utility Charges - Electricity |
| Amount | $19.77 |
| Amount Paid | $19.77 |

----------------------------------------------------------------

| Date | Oct 01, 2022 |
|---|---|
| Description | Utility Charges - Trash |
| Amount | $10.00 |
| Amount Paid | $10.00 |

----------------------------------------------------------------

| Date | Oct 01, 2022 |
|---|---|
| Description | Pest Control Reimbursement |
| Amount | $5.00 |
| Amount Paid | $5.00 |

----------------------------------------------------------------

| Date | Oct 01, 2022 |
|---|---|
| Description | Utility Service Fee |
| Amount | $8.99 |
| Amount Paid | $8.99 |

----------------------------------------------------------------

| Date | Oct 01, 2022 |
|---|---|
| Description | Cable Television Charges |
| Amount | $39.99 |
| Amount Paid | $39.99 |

----------------------------------------------------------------

| Date | Oct 01, 2022 |
|---|---|
| Description | Utility Charges - Water |
| Amount | $45.96 |
| Amount Paid | $45.96 |

----------------------------------------------------------------

| **Total** | **$2,203.25** |
|---|---|

Click here to login Resident Portal

Contact Halston Shiloh Valley at (770) 590-8673 for refund policy.

**Please retain for your records.**

  

Is this email not displaying correctly?
View it in your browser

 **Gmail**

**Christina Andrews <c████████@gmail.com>**

---

## Payment Confirmation for Christina Andrews for Halston Shiloh Valley
2 messages

**no-reply@entrata.com** <no-reply@entrata.com>                                    Wed, Nov 2, 2022 at 6:56 PM
Reply-To: no-reply@entrata.com
To: c████████@gmail.com



Payment Receipt
halstonshilohvalley.residentportal.com

**AUTHORIZATION CODE**
1584442097

**PAYMENT TYPE**            **Halston Shiloh Valley**
eCheck x4371               Christina Andrews
                          Unit: - 8012
**PAYMENT NUMBER**         2100 Shiloh Valley Dr NW #8012
1541174298                KENNESAW
                          GA 30144
**PAYMENT DATE**
Nov 02, 2022 06:56 PM
EDT

**PURCHASE SUMMARY**

Payment Amount                                                      $2,196.38

Shown on Statement as: Halston Shiloh Valley 3469 FR OP
This payment was processed by Entrata, Inc. on behalf of Halston Shiloh Valley.

**CHARGES PAID**

Date                                                         Nov 01, 2022

| Description | Rent |
|---|---|
| Amount | $2,016.00 |
| Amount Paid | $2,016.00 |

---

| Date | Nov 01, 2022 |
|---|---|
| Description | Property Unit Protection Fee |
| Amount | $14.00 |
| Amount Paid | $14.00 |

---

| Date | Nov 01, 2022 |
|---|---|
| Description | Package Concierge Fee |
| Amount | $5.00 |
| Amount Paid | $5.00 |

---

| Date | Nov 01, 2022 |
|---|---|
| Description | Utility Charges - Water |
| Amount | $37.87 |
| Amount Paid | $37.87 |

---

| Date | Nov 01, 2022 |
|---|---|
| Description | Utility Charges - Electricity |
| Amount | $14.45 |
| Amount Paid | $14.45 |

---

| Date | Nov 01, 2022 |
|---|---|
| Description | Utility Charges - Trash |
| Amount | $10.00 |
| Amount Paid | $10.00 |

---

| Date | Nov 01, 2022 |
|---|---|
| Description | Pest Control Reimbursement |
| Amount | $5.00 |
| Amount Paid | $5.00 |

---

| Date | Nov 01, 2022 |
|---|---|
| Description | Utility Service Fee |
| Amount | $8.99 |
| Amount Paid | $8.99 |

---

| Date | Nov 01, 2022 |
|---|---|
| Description | Lease Violation Fees |
| Amount | $200.00 |
| Amount Paid | $85.07 |

---

| **Total** | **$2,196.38** |
|---|---|

Click here to login Resident Portal

Contact Halston Shiloh Valley at (770) 590-8673 for refund policy.

**Please retain for your records.**



 

Is this email not displaying correctly?
View it in your browser

---

**no-reply@entrata.com** <no-reply@entrata.com>
Reply-To: no-reply@entrata.com
To: ⬛⬛⬛⬛@gmail.com

Wed, Nov 2, 2022 at 6:57 PM



Payment Receipt
halstonshilohvalley.residentportal.com

**AUTHORIZATION CODE**
1584442414

**PAYMENT TYPE**
eCheck x4371

**PAYMENT NUMBER**
1541174563

**PAYMENT DATE**
Nov 02, 2022 06:57 PM
EDT

**Halston Shiloh Valley**
Christina Andrews
Unit: - 8012
2100 Shiloh Valley Dr NW #8012
KENNESAW
GA 30144

**PURCHASE SUMMARY**

Payment Amount                                                    $0.10

Shown on Statement as: Halston Shiloh Valley 3469 FR OP
This payment was processed by Entrata, Inc. on behalf of Halston Shiloh Valley.

**CHARGES PAID**

| Date | Nov 01, 2022 |
|---|---|
| Description | Utility Charges - Water |
| Amount | $45.18 |
| Amount Paid | $0.10 |

**Total** **$0.10**

Click here to login Resident Portal

Contact Halston Shiloh Valley at (770) 590-8673 for refund policy.

**Please retain for your records.**





Is this email not displaying correctly?
View it in your browser

 **Gmail**                                    Christina Andrews <●●●●●●●●●●@gmail.com>

---

# Payment Confirmation for Christina Andrews for Halston Shiloh Valley
1 message

**no-reply@entrata.com** <no-reply@entrata.com>                          Sat, Dec 3, 2022 at 2:18 PM
Reply-To: no-reply@entrata.com
To: c●●●●●●●●●●@gmail.com



Payment Receipt
halstonshilohvalley.residentportal.com

**AUTHORIZATION CODE**
1589605844

**PAYMENT TYPE**              **Halston Shiloh Valley**
E-Money Order                Christina Andrews
                             Unit: - 8012
**PAYMENT NUMBER**           2100 Shiloh Valley Dr NW #8012
1544297648                   KENNESAW
                             GA 30144
**PAYMENT DATE**
Dec 03, 2022 02:18 PM
EST

**PURCHASE SUMMARY**

Payment Amount                                              $2,188.66

Memo:MoneyGram Payment for TID: 67153164

Shown on Statement as: Halston Shiloh Valley 3469 FR OP
This payment was processed by Entrata, Inc. on behalf of Halston Shiloh Valley.

**CHARGES PAID**

| Date | Nov 10, 2022 |
| Description | Late Charges |
| Amount | $175.00 |
| Amount Paid | $175.00 |

| Date | Nov 01, 2022 |
| Description | Utility Charges - Water |
| Amount | $45.18 |
| Amount Paid | $45.08 |

| Date | Nov 01, 2022 |
| Description | Lease Violation Fees |
| Amount | $200.00 |
| Amount Paid | $114.93 |

| Date | Nov 01, 2022 |
| Description | Cable Television Charges |
| Amount | $39.99 |
| Amount Paid | $39.99 |

| Date | Dec 01, 2022 |
| Description | Rent |
| Amount | $2,016.00 |
| Amount Paid | $1,813.66 |

| **Total** | **$2,188.66** |

Click here to login Resident Portal

Contact Halston Shiloh Valley at (770) 590-8673 for refund policy.

**Please retain for your records.**



 

Is this email not displaying correctly?
View it in your browser